## ARTHUR H. DAILEY v. ANN KING.

### *Fraud—Compromise of claim.*

1. The law favors the settlement of controversies without litigation, when the compromise itself is not effected by fraud, undue advantage, or duress.

   So *held*, where a vendee in a land contract, who claimed to have purchased more land than was described therein, and that the misdescription grew out of the fraud of his vendor, who pointed out to him the entire parcel of land he claimed to have purchased as the parcel proposed to be sold to him, purchased the parcel of land in dispute without any compulsion, and under no financial difficulty, and, after paying the balance of the original consideration, and all but $100 of the consideration for the second purchase, filed a bill to correct the description in the original contract so as to describe both parcels of land, and he is held to have waived the fraud complained of, if any was practiced upon him.

2. The following propositions are summarized from the opinion of Mr. Justice MORSE:

   *a*—It was held in *Headley v. Hackley*, 50 Mich. 43, that an alleged compromise might be contested by showing that the party relying upon it had acted unfairly or oppressively, though no duress was shown, and asserted claims which he knew to be wrongful, for the purpose of securing the terms which had been nominally assented to; citing *Hackley v. Headley*, 45 Mich. 570; *Gates v. Shutts*, 7 Id. 127; *Converse v. Blumrich*, 14 Id. 109; *Hull v. Swarthout*, 29 Id. 249; *Sanford v. Huxford*, 32 Id. 313.

   *b*—Parties who have been defrauded must use diligence, or

have some excuse for not using it, to obtain redress, within some reasonable time, and are barred by such subsequent dealings as indicate a waiver of their right to complain. *Craig v. Bradley*, 26 Mich. 353.

Appeal from Wayne. (Hosmer, J.) Argued January 31, 1890. Decided February 20, 1890.

Bill for correction of description in a land contract, and for execution of deed, etc. Complainant appeals. Affirmed. The facts are stated in the opinion.

*Atkinson & Wiest*, for complainant.

*Orla B. Taylor* and *Edwin F. Conely*, for defendant.

MORSE, J. The complainant filed his bill, in this case, alleging the purchase of a house and lot, in the city of Detroit, of defendant, upon a contract, and praying that the contract be corrected so as to correctly describe the land he bargained for.

He sets up in his bill that at the time of the purchase the defendant showed to him and his wife the boundary lines of the premises, and represented to them that the land purchased included all the land covered by the cottage and sheds which he was buying; that, relying upon this statement, he did not measure the land, which was described as 25 feet in width at front, and 72 feet deep on the southerly line, and 48 feet on the northerly line, —the back boundary of the lot running 14 feet northerly from the southerly line, and thence angling to the northerly line.

That this description does not cover all of the land sold to him, and pointed out to him at the time he purchased; that, supposing the land was correctly described, he entered into possession of the same, and has paid the consideration price in full; that, when he learned of the deficiency in the description of the land, he asked defend-

ant to correct the same, which she refused to do; and that on December 10, 1887, he presented to defendant a deed correctly describing the premises, and requested her to execute it, which she refused to do.

The defendant, in her answer, denies that she ever pointed out to him, or sold him, any more land than is described in the contract, and denies that she ever represented to him that the land to be purchased by him included all the land covered by the cottage and sheds.

She avers that on July 2, 1887, complainant agreed and entered into another contract with her, to purchase three and one-half feet more land on the north side, for which he was to pay her $350 additional; that he has not paid $100 of this, which was due January 1, 1888.

The proofs show that the first contract was made January 26, 1887, and the same was drawn by Robert Hosie, who was doing Mrs. King's business; that it was talked that the land was to have a front of 25 feet, and Dailey supposed that this would take in the whole of the buildings,—understanding that the eaves on the north side of the house were on the north line of the land. He learned subsequently, and after he had made some payments, that he lacked three and one-half feet in order to include the buildings he intended to purchase. According to his own testimony, he saw Mrs. King, and she refused to correct the contract, or to do anything except to sell him the needed space for $350. He then went to see Mr. Hosie about it. Hosie looked the contract over, and said:

"There is only one thing—two things—for you to do: You have either got to have a lawsuit, and employ a lawyer, or you have got to buy some ground of Mrs. King,—whichever you think proper. I would not like to advise you what to do, but one or the other has got to be done."

Complainant, to escape a lawsuit, on July 2, 1887,

made a new contract with Mrs. King, which was indorsed on the original, and reads as follows:

"DETROIT. 2nd July, 1887.

"I hereby agree to sell Arthur H. Dailey an additional 3½ feet on the north side of the within-mentioned land, fronting on Third avenue, and running back on said north line easterly 48 feet; thence angling to the present rear point as shown on plot, viz., 14 feet from the southeast corner of said plot, and being as follows for the two pieces together: [here plot was shown] for the sum of $350, payable as follows: $50 on the 2nd of October, 1887; $100 on the 2nd of November, 1887; $100 on the 2nd of December, 1887; and $100 on the 1st of January, 1888,—with interest at the rate of 7 per cent. per annum until fully paid up. Deed to be given for the same as soon as paid up.

"ANN $\overset{\text{her}}{\text{X}}$ KING.
mark.

"I hereby agree to purchase said additional 3½ feet front, as above described, at the price and on the terms named.                          ARTHUR H. DAILEY."

At the time this second contract was made, some $900 in money had been paid upon the original. After the execution of the last contract, Dailey paid what was due upon the first one, and all but $100 upon the second. He filed his bill on December 10, 1887,—the same day he presented the deed to Mrs. King for execution. The circuit judge, Hon. George S. Hosmer, after hearing the proofs, said that he thought the contemplation of both parties at the time of the purchase was that the premises occupied by the cottage should be included, with the possible exception that the line cut off the corner of the steps, but that the complainant, although entitled to relief, as he viewed it, in the first place, had afterwards, knowing the situation, made an agreement with Mrs. King to buy the additional 3½ feet, and that in so doing had precluded himself from any relief, and finally dismissed complainant's bill.

The complainant appeals, and his counsel contend that this second agreement was absolutely without consideration, and that the proofs show that he was entitled to this additional land under his first purchase, and that his agreement to pay the $350 did not change the situation; that it was only an agreement to pay her this sum for his own land; that there was no dispute to settle or compromise; that it was simply an attempt upon the part of Mrs. King so sell a strip of land that she had sold before; and that the case is governed by *Headley v. Hackley,* 50 Mich. 43, and cases there cited. It was there held that an alleged compromise might be contested by showing that the party relying upon it had acted unfairly or oppressively, though no duress was shown, and asserted claims which he knew to be wrongful, for the purpose of getting the terms which had been nominally assented to. See, also, *Hackley v. Headley,* 45 Mich. 570 (8 N. W. Rep. 511), for a full understanding of the case, which is the same. The cases from this Court cited in *Headley v. Hackley,* 50 Mich. at page 45 are *Gates v. Shutts,* 7 Mich. 127; *Converse v. Blumrich,* 14 Id. 109; *Hull v. Swarthout,* 29 Id. 249; *Sanford v. Huxford,* 32 Id. 313.

These cases are hardly applicable to the case here. The proofs show that 25 feet front was the amount of land talked about, and agreed to be sold; and if, as claimed by counsel for complainant in his brief, the defendant supposed and intended to sell the land now described in both contracts, or even if she committed a fraud in pointing out to complainant more land than the 25 feet covered, knowing that the house was wider than that, and covered 28½ feet of land in width, there are no circumstances to show that the complainant was either deceived or forced by any circumstances into the second contract. He knew, if it be true, that she was claiming

to own land that she sold to him. She was not his equal in intelligence, and had no advantages over him that she could use in litigation in regard to the purchase. He thought it cheaper to pay her the $350 than to have a lawsuit. He has probably learned by this time that he was right in his first impressions. Deliberately, with his eyes wide open, and without any compulsion, and under no financial difficulty, he saw fit to enter into this contract to pay her $350, and paid the balance of the original consideration, and $250 upon his last agreement, before moving against the fraud upon him. He must be considered as having waived it.

Parties who have been defrauded must use diligence, or have some excuse for not using it, to obtain redress, within some reasonable time, and are barred by such subsequent dealings as indicate a waiver of their right to complain. *Craig v. Bradley*, 26 Mich. 353. The compromises in that case were made or consented to under a strong pressure of financial necessity (wanting here), but it was held that, having elected to make them, and accept their fruits, the complainants could not afterwards prosecute their claims growing out of the original breaches of trust.

"Fraud may be waived and condoned; and a defrauded party must act consistently, or he will lose his right to complain of it." See Justice CAMPBELL's opinion, pages 369 and 370; *Goebel v. Linn*, 47 Mich. 489, 492.

The compromise contract had been nearly carried out before complainant filed his bill. He knew his rights when he made it; yet he not only executed it as his own free choice between two evils, but afterwards, with the knowledge that he had surrendered his rights in making it, he goes on with its fulfillment, nearly to the end, before he repudiates it. He cannot now be rid of it. *Street v. Dow*, Har. Ch. 427.

The law favors the settlement of controversies without litigation, when the compromise itself is not effected by fraud, undue advantage, or duress. And when a party, as in this case, knows that the other is asserting a claim without right, but prefers to settle such claim rather than to go to law, and does so understandingly, and upon equal terms with the other as to capacity, financial and otherwise, to litigate, if he so desires, and there is no deception in obtaining the settlement, and such contract of settlement is performed or nearly performed, as in this case, with deliberation, and not of necessity, I do not think it is the duty of the courts, or the policy of the law or of equity, to set aside such settlement on the ground of no consideration, and open up the relief which the defrauded party might have secured before he waived the fraud upon him by such settlement.

It is by no means certain, from the record, that Mrs. King intended to defraud the complainant when the first contract was made. It may be that she supposed the 25 feet front would include all the building, and the claim of $350 was an after-thought. But, be that as it may, if she did intend the fraud at first, the fraud was waived by the complainant, with full knowledge of his rights, and of her fraud, and a new arrangement entered into by him, which he nearly performed, and which he cannot now rescind because of the original fraud, or revoke for want of consideration. There was a dispute between them as to the land. He claimed he was entitled to it, under his purchase, for the original contract price. She insisted the contract did not cover it, and demanded $350 for it. The matter was settled by complainant acceding to her terms. Courts do not go behind such settlements, when fairly and freely made, to ascertain who was right in the original controversy. The settlement is valid, because it is the settlement of a controversy,—not because it is the

settlement of a valid claim. *Flannagan v. Kilcome*, 58 N. H. 443.

The decree is affirmed, with costs.

CHAMPLIN, C. J., CAMPBELL and GRANT, JJ., concurred. LONG, J., did not sit.

79    575
83    412

79    575
85    278

79    575
102    486

79    575
d136    69