BEDIER *v.* FULLER.

FRAUD—ELECTION OF REMEDIES—WAIVER OF TORT.
   One who has been induced by fraudulent representations to sell property for less than its real value cannot disaffirm the contract, and, waiving the tort, maintain *assumpsit* as upon an implied promise for the difference between the amount so received and the actual value of the property.

Error to Wayne; Carpenter, J. Submitted June 7, 1895. Decided September 26, 1895.

*Assumpsit* by Josephine Bedier against Jay Fuller and others to recover the difference between the actual value

of plaintiff's interest in her father's estate and the amount
for which she sold the same to defendants by reason of
their alleged fraudulent representations. (See 95 Mich.
518.) From a judgment for defendants on demurrer to
the declaration, plaintiff brings error. Affirmed.

*F. A. Baker (George Gartner,* of counsel), for appellant:

In support of the proposition that plaintiff could waive
the tort and sue in *assumpsit,* counsel cited:    *Moore* v.
*Mandlebaum,* 8 Mich. 433; *Fiquet* v. *Allison,* 12 Mich. 328;
*Johnson* v. *Insurance Co.,* 39 Mich. 33; *Barnard* v. *Colwell,*
39 Mich. 215; *Chandler* v. *Childs,* 42 Mich. 128; *McLaugh-
lin* v. *Salley,* 46 Mich. 219; *Nugent* v. *Teachout,* 67 Mich.
571; *Tuttle* v. *Campbell,* 74 Mich. 652; *Aldine Manfg. Co.*
v. *Barnard,* 84 Mich. 632; *Railway Co.* v. *Chew,* 67 Ill. 378;
*Dietz* v. *Sutcliffe,* 80 Ky. 650; *Roberts* v. *Evans,* 43 Cal. 380;
*Lehmann* v. *Schmidt,* 87 Cal. 15; *Roth* v. *Palmer,* 27 Barb.
652; *Hawk* v. *Thorn,* 54 Barb. 164; *Putnam* v. *Wise,* 1 Hill,
234, 240 (note *a*); *Berly* v. *Taylor,* 5 Hill, 584 (note *a*);
*Goodwin* v. *Griffis,* 88 N. Y. 629; *Blalock* v. *Phillips,* 38 Ga.
216; *Manufacturing Co.* v. *White,* 53 Ga. 395; *Evans* v. *Mil-
ler,* 58 Miss. 120; *Logan* v. *Wallis,* 76 N. C. 416; *Norden* v.
*Jones,* 33 Wis. 604; *Walker* v. *Duncan,* 68 Wis. 624; *Mor-
ford* v. *White,* 53 Ind. 547; *Stockett* v. *Watkins,* 2 G. & J.
343; *Gordon* v. *Bruner,* 49 Mo. 570; *Winter* v. *Bandel,* 30
Ark. 362; *Jones* v. *Hoar,* 5 Pick. 285; *Marshall* v. *Gilman,*
47 Minn. 131, 52 Minn. 88.

*John D. Conely,* for appellees:

Fraud does not render a contract void, but merely void-
able at the election of the defrauded party; and if a ven-
dor, having a right to rescind a contract of sale of goods
on account of the fraud of his vendee in making the pur-
chase, brings *indebitatus assumpsit* to recover the price of
the goods, he thereby affirms the contract. *Galloway* v.
*Holmes,* 1 Doug. (Mich.) 330; *Jewett* v. *Petit,* 4 Mich. 508;
*Emerson* v. *Detroit Steel & Spring Co.,* 100 Mich. 127. One
who has been induced by the fraudulent representations
of another to enter into a contract may affirm or disaffirm
it; but he cannot do both, and he must affirm or disaffirm
altogether. He cannot adopt the part which is for his
own interest and reject the residue. Same cases, and
*Peninsular Bank* v. *Hanmer,* 14 Mich. 208; *Merrill* v. *Wil-*

*son,* 66 Mich. 232. Where the defrauded party rescinds
an express contract, he cannot set up an implied one
(*Galloway* v. *Holmes,* 1 Doug. [Mich.] 330; *Jewett* v. *Petit,*
4 Mich. 508; *Emerson* v. *Detroit Steel & Spring Co.,* 100
Mich. 127); and plaintiff's only remedy is to take the con-
tract as it is, or sue in an action on the case (*Jewett* v.
*Petit,* 4 Mich. 508; *Walsh* v. *Sisson,* 49 Mich. 423; *Emerson*
v. *Detroit Steel & Spring Co.,* 100 Mich. 127).

LONG, J. The declaration in this case contains the
common counts in *assumpsit* and a special count, also in
*assumpsit,* which sets forth, substantially, that Joseph
Coon was a resident of the county of Wayne, and had real
estate of the value of $100,000, and personal estate of the
value of $2,000; that he died intestate, leaving a widow
and heirs at law; that plaintiff was one of such heirs at
law, and, as such, entitled to an undivided one-sixth of
his estate; that the debts of the estate were less than the
sum of $8,000, and the widow somewhat advanced in
years, so that the value of her dower did not exceed the
sum of $16,000; that the net one-sixth undivided share
possessed by the plaintiff was of the value of $15,000; that
defendants knew the values above mentioned, but plain-
tiff's home was in Montana, and she herself was not
familiar with the value of her father's estate, or the
amount of his debts, or with the value of the widow's
dower, and she was without means to go to Detroit, from
Montana, to look after her interest; that she was unac-
customed to business and to transactions like those men-
tioned; that defendant Fuller was appointed adminis-
trator of the estate of Joseph Coon; that he qualified, and
entered upon the performance of his duties; that he was
and is an attorney and counselor at law, duly licensed
to practice in the courts of this State; that the other
defendants (Wilmarth and Reaume) were his clients and
friends, and frequenters of his office in Detroit; that on
April 1, 1889, the three defendants entered into a con-
spiracy to defraud the plaintiff of the greater part of
her share of her father's estate; that on October 3, 1889,

at the special instance and request of all the defendants, plaintiff executed, at Montana, and forwarded and delivered to all the defendants, at Detroit, a deed and conveyance, running to the defendant Reaume, of her one-sixth interest in her father's estate; that about two months later, namely, on December 2, 1889, the defendant Reaume and his wife gave to one Josephine Kenney a mortgage on that part of said one-sixth which was situated on Michigan avenue, in Detroit; that, upon the security of this mortgage, all the defendants borrowed from said Josephine Kenney the sum of $500, which money they all caused to be paid to the plaintiff, as a part of the consideration for her deed above mentioned; that all the defendants thereupon caused this Kenney mortgage to be recorded, and at the same time the deed from plaintiff was recorded, so that the Kenney mortgage was the first mortgage or lien on the property described in it, being plaintiff's share in the Michigan avenue lots; that five days later, being December 7, 1889, all the defendants caused Reaume to give the plaintiff a mortgage on the one-sixth interest in the Michigan avenue lots, and upon a sixth interest in a small house on Howard street, as the remaining part of the consideration for her deed; that the condition of this mortgage from Reaume to the plaintiff is as follows:

*Provided, always,* and these presents are upon this express condition, that if the said parties of the first part [Reaume and wife] shall and do well and truly pay or cause to be paid to the said party of the second part [plaintiff] the sum of four thousand dollars, within two years after the estate of Joseph Coon, deceased, is fully settled and distributed,—this mortgage is to draw legal interest from and after the time said estate is fully settled and distributed, and that said legal interest is six per cent. per annum, all interest to be due and payable semi-annually; and after the said settlement of said estate, and the distribution of the same, said first parties to have the privilege of paying the whole or any part of the principal sum due hereon at any time,—according to a promissory note, bearing even date herewith, executed

by Denis J. Reaume to the said party of the second part, to which this indenture is collateral security, then these presents and said promissory note shall cease and be null and void."

That the promissory note is in the words and figures following:

"$4,000.                         December 7, 1889.

"According to a real-estate mortgage, after date I promise to pay to the order of Josephine Cole four thousand dollars, at law office of Jay Fuller, Detroit, Mich., with interest, according to a real-estate mortgage bearing even date herewith and collateral hereto. Value received.

"DENIS J. REAUME."

That two months later, namely, on February 10, 1890, the plaintiff made an assignment of this mortgage to defendant Wilmarth, and received from all the defendants $1,000 in money, and the promise of all to pay her the balance when the mortgage should be collected, and that the mortgage and assignment were then recorded; that the following summer, namely, June 21, 1890, this being between nine and ten months after she had conveyed her interest to Reaume, plaintiff, at the special instance and request of all the defendants, executed another and a full assignment to Wilmarth of the mortgage given by Reaume, and upon receiving this full assignment all the defendants paid to her the sum of $3,000, being the entire balance owing to her.

The count avers that for the purpose of inducing plaintiff to execute the deed of October 3, 1889, the first assignment to Wilmarth (that of February 10, 1890), the further assignment of June 21, 1890, and to accept the sum of $4,500 as the purchase price of her said share, the defendants, and each of them, made certain fraudulent representations, substantially as follows:

1. That her share was not worth to exceed $4,500.

2. That the widow's dower would absorb about half of the estate.

3. That the widow insisted upon having, for her right

of dower, $30,000 in cash, and that this would take two-thirds of the estate, if it was sold at auction.

4. That the debts and expenses of administration would be between ten and twelve thousand dollars, and that it would take all of the farm lands of Joseph Coon to pay the same.

5. That the estate was so involved in litigation that the heirs at law would not realize anything.

6. That it would be necessary to sell the estate of Joseph Coon at forced or auction sale to pay the debts of the estate.

7. That the heirs of Joseph Coon, including the plaintiff, were not entitled to draw any money from the estate, or to realize thereon, until the estate was settled, and that the plaintiff could get all the money she wanted, from any one, on the mortgage given to her by defendants.

8. That the other children and heirs of Joseph Coon were not entitled to receive, and could not and would not get, more than $4,500 for or from their respective shares of the estate, and that that amount was all that the one-sixth share of said estate was worth.

The count then avers that the plaintiff believed these representations, and, if she had not been deceived and misled by them, would not have made the deed or assignments, nor would she have accepted the $4,500 as the purchase price, and that by means of the promises, and in consequence of the fraud, the defendants deprived her of all the value of her share of her father's estate, over and above the sum of $4,500. The count adds:

"Waiving the tort, and suing in *assumpsit*, * * * the defendants became and were and are liable to pay to the plaintiff the difference between the said sum of $4,500 and the real and actual value of her share in her father's estate, * * * and, being so liable, * * * the defendants promised to pay to the plaintiff the said sum of money."

Two of the defendants (Jay Fuller and Hiram D. Wilmarth) demurred to this count. They assigned three causes of demurrer: (1) That said special count does not state a cause of action founded on contract, either express

or implied; (2) that said special count does not state a cause of action for which *assumpsit* will lie; (3) that said special count does not state a cause of action which will warrant or sustain a writ of attachment. The demurrer was sustained in the court below. Judgment was entered for defendants Fuller and Wilmarth on this demurrer. Plaintiff brings the case into this court by writ of error.

The damages claimed by this count is the difference between the sum paid for the deed and the actual value of plaintiff's share of her father's estate. It is the only sum claimed by this count. It is this amount out of which plaintiff claims to have been defrauded by the defendants. The count sets out that the consideration for the deed was $4,500, and it is admitted that she received that amount. This is the only sum which defendants agreed to pay, and that amount has been paid. If a fraud was perpetrated, it was in procuring the deed at the price of $4,500, and it was then and there accomplished. But plaintiff, by her declaration, waives the tort, and sues in *assumpsit*. We think the averments in the declaration preclude a recovery in this form of action. The agreed price for the property was $4,500, and no implication can arise that any greater sum was agreed upon. We think the case is ruled by *Galloway* v. *Holmes*, 1 Doug. (Mich.) 330, and *Emerson* v. *Detroit Steel & Spring Co.*, 100 Mich. 127. One who has been induced by the fraudulent representations of another to enter into a contract may affirm or disaffirm it. If he disaffirm, and assert the fraud, he cannot, in the same action, turn it into an action of *assumpsit*, and recover as for an implied promise. As was said in *Emerson* v. *Detroit Steel & Spring Co., supra:*

"It is suggested that, as a fraud was perpetrated upon the creditor, he would have the right to waive the tort and sue in *assumpsit*. But we are aware of no case which authorizes a party to first turn a contract into a tort, and then shift it back into the form of a new contract other than the original one."

The cases above cited are so squarely in point that we deem further discussion of the question unnecessary.

The judgment below must be affirmed.

**The other Justices concurred.**