## BENNETT *v.* HICKEY.

1. LAND CONTRACT—RIGHT OF RESCISSION—LACHES—WAIVER.

    The right of a vendee of land to rescind a contract for its purchase because of a dispute as to the exact location of one of the boundaries, and because of the refusal of the vendor to consent to an assignment of the contract in accordance with its terms, is waived, where he continues for six months after knowledge of the facts to make payments upon the contract, and to exercise acts of ownership over the land, without asserting any intention to rescind.

2. SAME—ACREAGE—SETTLEMENT.

    Premises sold under a land contract were described as containing 23.03 acres, more or less; it being agreed that the exact dimensions should be subsequently ascertained.    The owner of adjoining property asserted a claim to a strip claimed by the vendor.    A survey showed 23.75 acres inclusive, and 23.43 acres exclusive, of the strip in controversy.    The vendee was dissatisfied with this survey, but agreed that, if it should be verified by the county surveyor, he would abide by it.    Such survey was made, and showed a still larger acreage.    A settlement was subsequently effected between the vendor and the adjoining owner, whereby the latter relinquished his claim to the land in dispute.    *Held,* that payment should be required on the basis of 23.75 acres.

Cross appeals from Wayne; Carpenter, J.  Submitted January 7, 1897.   Decided April 27, 1897.

Bill by William C. Bennett against Edward J. Hickey and others to rescind a land contract, and to recover the moneys paid thereon.   Defendants filed an answer in the nature of a cross-bill, praying for a foreclosure of the contract.   From the decree rendered, all parties appeal. Modified and affirmed.

*Fraser & Gates*, for complainant.

*Keena & Lightner*, for defendants.

Moore, J.  The bill in this case was filed March 18, 1895, to obtain an accounting of the moneys paid by complainant to defendants Hickey, Tannahill, Caswell, and Kern under a land contract between them dated March 1, 1893, and to foreclose his vendee's lien upon the premises in question.  These defendants filed an answer in the nature of a cross-bill to foreclose the contract.   A decree was made in favor of the defendants for the greater part of what they claimed.  Both sides appealed.

March 1, 1893, complainant entered into a contract in writing with defendants Hickey, Tannahill, Caswell, and Kern, whereby they agreed to sell and convey to him land in the township of Greenfield, described as follows:

"Bounded on the west by the westerly line of the southeast quarter of section 10; on the south by the center line of the six-mile road; on the east by a line parallel with the westerly boundary of said property, and being the dividing line of the properties formerly known as the J. Stebbins and the H. Valentine farms, said eastern boundary line running northerly from the said six-mile road to the southern boundary line of the northeast quarter of said section 10; on the north by the southerly boundary line of the northeast quarter of said section 10,—containing twenty-three and 3-100ths (23.03) acres, more or less."

It was agreed that the exact dimensions and extent of said land should be ascertained by a survey to be made

at the expense of defendants. Complainant agreed to purchase and pay for the land at $750 per acre; $6,037.75 on the execution of the contract, and the balance April 8, 1895, with interest at 6 per cent. per annum, payable semi-annually. The complainant was not to assign the contract without the consent of the defendants. They were to consent to the assignment of the contract if the assignees were of equal financial responsibility with complainant.

Mrs. Yemans was the owner of the 26 acres next east of the land described in the contract. Between the two pieces of land was a ditch. On the west bank of the ditch was a fence, leaving a small strip of land between the fence and the center of the ditch, that was occupied by Mrs. Yemans, but which the defendants claim they owned when the contract was made, and which they insist was included in the contract. The defendants caused the land to be surveyed by Mason L. Brown. He surveyed only that part west of the fence. According to his survey, there was 23.438 acres of land. Later he made a survey which embraced all the land west of the center of the ditch. This survey showed 23.755 acres. The complainant was not satisfied with this survey, and agreed that, if the county surveyor was employed, and his survey showed there was as much land as was shown by the last survey made by Mr. Brown, he would abide by Mr. Brown's survey. The county surveyor was employed, and his survey showed there was 23.98 acres of land. The parties, however, failed to arrive at a settlement.

There was a controversy as to the ownership of the strip of land between the fence and the ditch. The defendants held their title through a contract running to them from John B. Moloney. On May 10, 1894, a written agreement was made between Mr. Moloney and Mrs. Yemans, in which the descriptions of land claimed by the respective parties were set out, and an agreement was made that, until the line of said ditch changes from the

first direction to a more easterly or northeasterly course, the center of the ditch should be recognized "to be the line and actual line of division between their respective properties." It was further provided that Mrs. Yemans, "her heirs, assigns, or administrators, have no right, title, interest, or claim of any kind, name, or nature in and to any part or portion of the land lying between the fence above described and the center of said ditch." This instrument was signed, sealed, and acknowledged by the parties, and executed in duplicate, and one of them was tendered by the defendants to the complainant.

In the fall of 1894 the complainant assigned his contract to his sons, living in Muskegon. September 10, 1894, the contract, with the assignment, was presented to the defendants, with a request that they consent to the assignment. At the same time, and as a part of the transaction, a request was made of them to sign a receipt for "$336.37, being the interest due September 1, 1894, on a certain contract for 23.03 acres of land," etc. They declined to sign the consent for an assignment on the basis of 23.03 acres, but signified their willingness to do so upon the basis of what acreage there actually was of the land. On September 24, 1894, the complainant made a payment on the land contract "of $336.37 on account of interest due September 1, 1894." No attempt was ever made by complainant to rescind the contract on account of the disputed strip of land, and no attempt was made to rescind it because of the refusal to consent to the assignment, until this bill was filed, March 18, 1895. The bill is filed for the purpose of rescinding the contract, and to recover for the payments made thereon and interest.

The defendants filed an answer in the nature of a cross-bill, and for a foreclosure of the contract for the payments remaining unpaid, and for a sale of the land. The circuit judge was of the opinion that, if the complainant had the right to rescind because of the condition of the disputed strip of land, notice of which came to complainant in the summer of 1893, or because of the refusal of the

defendants, September 10, 1894, to consent to the assignment, it was his duty to act promptly. The judge held that complainant's having made a payment subsequent to the act of which he complains, and having continued to exercise acts of ownership over the land, were acts inconsistent with an election to rescind, and that his delay in indicating any intention to rescind the contract until March 18, 1895, when he brought this proceeding, precluded his right to do so now; citing *Farrington* v. *Smith*, 77 Mich. 550; *Condon* v. *Hughes*, 92 Mich. 367, 369; *Bedier* v. *Reaume*, 95 Mich. 518. The bill was dismissed, and a decree granted in favor of the defendants, based upon an acreage of 23.438 acres.

We agree with the learned judge that, if complainant intended to rescind the contract because of the defendants' refusal to perform its conditions, it was his duty to act promptly, and that he failed to do so. We cannot but conclude from the record that, had this land increased in value instead of depreciating, this bill would not have been filed.

The defendants have appealed, and claim they should have been allowed to recover for the land between the fence and the ditch. An inspection of the record shows that the conveyance to Mrs. Yemans makes the line of the ditch her west line. The conveyance to Mr. Moloney makes the line of the ditch his east line. The testimony also discloses that Mrs. Yemans has not, at any time, and does not now, make claim to any more than 26 acres of land. Whatever else may be the effect of the instrument executed by her and Mr. Moloney, May 10, 1894, we think it decided that the center of the ditch was the line between the land owned by Mrs. Yemans and the land described in complainant's contract. The Brown survey shows that, treating the center of the ditch as the division line, there is 23.755 acres of this land. As the complainant agreed to abide by this survey if the survey made by Mr. Goodell should show there was as much land as Mr. Brown's survey showed, and, as the Goodell survey

showed there was even more of the land than was shown by Mr. Brown's survey, it is not inequitable to require payment on the basis of 23.755 acres. The decree will be modified in that respect, and affirmed, with costs.

The other Justices concurred.