HAKES *v.* MACKLIN.

1. PROCESS—SERVICE—JOINT DEFENDANTS.
    Where plaintiff caused a summons to be issued against several joint defendants, and after service had been made upon several of them, and after the sheriff's return showing such service, plaintiff caused an alias summons to be issued to the sheriff of another county, where one of the defendants was found and served, the objection that the original summons was returned before service upon certain defendants, and before the return day thereof, amounted merely to an irregularity of which plaintiff alone could complain. Act No. 225, Pub. Acts 1901.

2. FRAUD—SALES—BILLS AND NOTES—WAIVER.
    Purchasers of a stallion who made no claim of fraud for up-

wards of four years after delivery of the animal, could not, after its death, defend an action on promissory notes in the hands of indorsers, for false representations as to the condition or quality of the stallion.

3. SAME—RESCISSION—SUFFICIENCY.

And their request, made at the end of the season to the vendor, to replace the animal in pursuance of his warranty in writing, given at the time of making such contract, was not a rescission, but an affirmance, of the sale.

Error to Mecosta; Palmer, J. Submitted April 5, 1911. (Docket No. 11.) Decided May 31, 1912.

Assumpsit by Elisha H. Hakes against Daniel Macklin and others upon three promissory notes. Judgment for plaintiff. Defendants bring error. Affirmed.

*Cogger & Broomfield,* for appellants.

*Louis E. Howlett,* for appellee.

BIRD, J. The defendants were sued as makers of three promissory notes for $600 each. A jury in the trial court gave plaintiff a verdict for the full amount of his claim, and the defendants have assigned error thereon in this court.

The notes in question were joint and several obligations, and were executed by 18 residents of Mecosta and Isabella counties and delivered to one Russell Iams for the purchase price of a Percheron stallion. The notes were dated March 27, 1902, and made payable on September 1, 1903, 1904, and 1905. An association known as the Millbrook Percheron Horse Breeding Association was formed to own and manage the horse. The signers of the note were members of the association and each owned a $100 share in the capital stock of $1,800. The following written guaranty was given to the defendants:

"Now, therefore, I hereby guarantee the above named horse to be a reasonable sure foal getter, with proper care and handling. In case he should not prove so, I agree

either to replace him with another horse of the same breed and price, upon delivery to me of the above named horse in as sound and good condition as he is at present, or to return the notes given for him, or refund the purchase price paid for said horse."

The horse was used for breeding purposes several seasons with rather indifferent success. After four and a half years of ownership by the defendants, the horse died as the result of an injury. Only 11 of the 18 signers were served with process, and but five of them made a defense.

The defense was the general issue and notice that the defendants would show that they were induced to purchase the horse and sign the notes by false representations made by Iams and his agents. The false and fraudulent representations consisted in the statements that the horse was a reasonably sure foal-getter and that each member of the association would be liable only for the amount of his stock. Notice was also given that it would be shown that the plaintiff was not a bona fide holder for value of the notes and that the contract with Iams had been rescinded.

Error is assigned because the trial court denied defendants' motion to dismiss the suit as to defendant Macklin. The record shows that the suit was commenced by summons against the 18 makers on the 11th day of August and the return day was fixed as September 1st. After service had been had upon 8 of the defendants in Mecosta county, and on August 18th, the sheriff returned the writ with a certificate to that effect, and a further notation that the other defendants were not found. On the 26th day of August a like summons was issued by the clerk of Mecosta county, directed to the sheriff of Isabella county, in which he was commanded to make service on certain other defendants, including the defendant Macklin. The summons bore the certificate of the clerk that 8 of the defendants, naming them, had already been served in the county of Mecosta. This summons was returned to the Mecosta county court with the return of the sheriff of

Isabella county that he had served defendant Macklin in that county. Defendant Macklin appeared specially and moved the court to vacate the service as to him on the ground that the process with which he was served was void.

It is argued by his counsel that, because the original summons was returned after being served on only a part of the defendants and before the return day, the subsequent summons issued to the sheriff of Isabella county was void. We are unable to agree with counsel in this conclusion. There is nothing in the statute which inhibits the issuing of another summons until after the return day named in the original writ. The statute provides that, "when one or more of the defendants shall be served with process, * * * the plaintiff in such action may sue out one or more writs of summons." 3 Comp. Laws, § 10010, as amended by Act No. 225, Pub. Acts 1901.

The important fact and the jurisdictional one is whether service has been had on one or more of the defendants in the county where the suit is commenced. The usual way of making proof of this fact is by the return of the writ with a certificate of service indorsed thereon. The latter part of rule 1 (*a*) enables plaintiff at his option to have a return made and still keep the writ in the hands of the officer until after the return day, as he might wish to do if he were laying the foundation for substituted service. No question of substituted service is involved here. If it can be said that a premature return of the writ was made under this statute, it would not render void the service upon the defendant Macklin. It would amount to nothing more than an irregularity at which only the plaintiff could complain.

The defendants have assigned a large number of errors based upon the admission and rejection of testimony upon the charge of the court and his refusal to charge. Plaintiff's counsel argues that the assignments of error are not well taken, and further that, if any error was committed

by the trial court, it was not prejudicial error for the reason that defendants made no case which entitled them to go to the jury. This is based upon the claim of plaintiff that, if there were any fraud in the making of the contract, the defendants have by their conduct waived it. We are much impressed by this argument. The record shows that the defendants purchased the horse in March, 1902; that they used him several seasons for breeding purposes, and later, one of the members of the association was permitted to have the use of him for his keeping. They kept him until he died in November, 1906. The five defendants who defended this action admitted upon cross-examination that they knew when they signed the notes that they were signing notes for $1,800. If they did, they must have known that the representation made to them that they would be liable for only the amount of their stock was untrue. They also knew as early as the fall of 1902 that the representation that the horse was a good foal getter was not in accordance with the fact, and yet they sat idly by for over four years without making any effort to rescind the contract on the grounds of fraud.

Defendants' counsel claim that the contract was rescinded by a letter written by Mr. Evans on June 9, 1902. After explaining in his letter that the horse had had very poor success, he says:

"We have given the horse a fair trial and at this writing the stockholders are very much dissatisfied and want you to come and replace the horse or take him back. The majority of the stockholders would prefer that you take him back. We will willingly submit to anything that is reasonable and fair. If you replace him we would ask you to date the notes ahead as we have lost this season besides the money we have spent."

There is no claim in the letter that they have been defrauded, neither is there any intimation that the contract is to be avoided on the ground of fraud. Instead, the letter is an attempt to induce Iams to carry out the contract by taking back the horse or replacing him with another.

In a very similar case where an attempt was made to defeat an action on the notes on the ground of fraud, without first rescinding the contract, this court said:

"The defendants cannot on this record question the validity of the contract on the ground of fraud, as they have never attempted to rescind the contract." *Rumsey* v. *Fox*, 158 Mich. 248 (122 N. W. 526).

In *Mestler* v. *Jeffries*, 145 Mich. 598 (108 N. W. 994), Mr. Justice MOORE, in speaking of the duty of one who has been defrauded, said:

"The law in relation to the rescission of contracts on the ground of fraud has been declared many times in this court. It is to the effect that a party intending to rescind a contract because of fraud must be prompt in communicating the fraud when discovered, and consistent in his notice to the opposite party of the use he intends to make of it," — citing the following authorities: *Jones* v. *Disbrow*, Har. Ch. (Mich.) 102; *Street* v. *Dow*, Har. Ch. (Mich.) 427; *Galloway* v. *Holmes*, 1 Doug. (Mich.) 330; *Craig* v. *Bradley*, 26 Mich. 353; *Hubbardston Lumber Co.* v. *Bates*, 31 Mich. 158; *Dunks* v. *Fuller*, 32 Mich. 242; *Farrington* v. *Smith*, 77 Mich. 550 (43 N. W. 927); *Dailey* v. *King*, 79 Mich. 573 (44 N. W. 959); *Condon* v. *Hughes*, 92 Mich. 367 (52 N. W. 638); *Wylie* v. *Gamble*, 95 Mich. 575 (55 N. W. 377); *Bedier* v. *Fuller*, 106 Mich. 342 (64 N. W. 331); *Warnes* v. *Brubaker*, 107 Mich. 440 (65 N. W. 276.); *Reed* v. *Ismond*, 110 Mich. 16 (67 N. W. 912); *Bennett* v. *Hickey*, 112 Mich. 383 (70 N. W. 900); *Speicher* v. *Thompson*, 141 Mich. 654 (104 N. W. 1104).

We are of the opinion that the defendants have, by their inaction and retention of the horse, waived their right to insist upon the fraud. Under this view of the case, the other assignments of error will not be considered.

The judgment of the trial court is affirmed.

MOORE, C. J., and McALVAY, BROOKE, and OSTRANDER, JJ., concurred.