## DRAFT v. HESSELSWEET.

1. VENDOR AND PURCHASER—REAL PROPERTY—FRAUD—WAIVER.
   Where the purchaser of land made payments on the purchase price and continued in possession after he discovered the fraudulent nature of the representations which induced him to buy, he is *held* to have waived the fraud, and his representative cannot urge it to defeat the foreclosure of a mortgage for the balance of the purchase price.

2. SAME—MATTER OF OPINION—RESCISSION.
   Representation to the purchaser of land that the fruit thereon would pay for it the first year was not a representation concerning a present existing fact, and must therefore be regarded as a matter of opinion, the falsity of which would not justify rescission on the ground of fraud.[1]

Appeal from Oceana; Sullivan, J. Submitted June 23, 1916. (Docket No. 81.) Decided March 29, 1917.

Bill by Louis Draft against Francis Hesselsweet. administrator of the estate of Oscar Klotter, and others, to foreclose a mortgage. Defendants filed an answer in the nature of a cross-bill asking for rescission of the contract. From a decree for defendants canceling the mortgage, plaintiff appeals. Reversed.

*A. S. Hinds* (*F. E. Wetmore,* of counsel), for appellant.

*S. Wesselius* (*Maynard & Chase* and *Paul H. Cunningham,* of counsel), for appellees.

BIRD, J. This bill is filed to foreclose a purchase-price mortgage on an 80-acre fruit farm in Oceana county, upon which there is claimed to be due upwards of $3,900. The mortgagor, Oscar Klotter, and his

---

[1] On the expression of opinion as fraud see note in 35 L. R. A. 417, particularly as to statements regarding the future see pp. 420 and 437 of same note.

wife, Katherine, filed their answer and cross-bill, charging that they were induced by the fraudulent representations of complainant and his agent to purchase the premises, and that they were thereby defrauded. They prayed for a rescission of the contract. The other parties defendant were interested in the premises as mortgagees. The chancellor refused to grant complainant any relief and refused to grant defendant Klotter the particular relief prayed for, but gave him other relief by ordering the mortgage canceled on the ground that what he had already paid on the purchase price was a fair value for the farm.

Prior to making this purchase, the defendant Oscar Klotter was a meat inspector in the city of Cincinnati. Through an advertisement he got into correspondence with L. H. Kennedy, a real estate agent, with whom the complainant had listed his farm for sale. In the latter part of May, 1911, Mr. Klotter came to Michigan and examined the farm, which was shown to him by Mr. Kennedy. Mr. Klotter returned to his home, but kept up negotiations until June 29, 1911, when he purchased the premises for $6,500. He paid $3,000 in cash and gave a mortgage thereon for $3,500 to secure seven notes of $500 each, one note being due and payable each year thereafter. Soon after this he moved on to the premises and at the end of the first year paid the $500 note due on the 29th of June, 1912. He refused to pay the note due June 29, 1913, and plaintiff exercised his election authorized by the mortgage to declare the whole sum due.

The representations which defendant claims he relied upon in making the purchase of the premises are contained in the following letter:

"ROTHBURY, OCEANA COUNTY, 5/25/11.
"MR. OSCAR KLOTTER,
    "Cleveland, Ohio.
*"Dear Sir:*
    "Yours of the 23d just received and contents noted.

Now if you would like to buy a fruit farm you had better come at once and look them over as we are selling them very fast. The fruit prospects here could not be any better. If No. 16 does not suit you we have a number of others. The soil is No. 1 here for all kinds of fruit, sandy loam, some farms very level, others rolling. This is a great fruit country, none better. The buildings on No. 16 are fine, in good repair, the fruit trees 7 years old, well cared for, no mortgage on farm, buildings insured for $2,600.00. Have fine 80 acre fruit farm, fine house, new large barn, all painted, windmill, 4,000 peach trees, 7 years old; 300 cherry trees, 7 years old; 150 apple trees, 10 years old; 2 acres of red raspberries, 1 acre gooseberries; the price is $7,000.00, $3,000.00 cash, the balance on easy payments. The fruit on this farm will pay for the farm this year. Two miles to village and depot, good roads, fine location, either of these farms are a big bargain. If you should come to Rothbury, by Grand Rapids; and when you get to Rothbury, go in the store and telephone me and I will show you farms.

"Yours truly,

"L. H. KENNEDY,

"Agent for E. A. STROUT CO."

The items of fraud which defendant relies upon are:

(1) That instead of there being 4,000 peach trees, 300 cherry trees, and 150 apple trees, there were only 2,279 peach trees, 110 apple trees, and 116 cherry trees.

(2) That plaintiff intentionally concealed from him the fact that the peach orchard was affected with an insidious disease, known as the "yellows," which is fatal to peach trees within four years after becoming infected.

(3) The representation that the fruit on the farm would pay for it in the first year.

The defendant Klotter was without experience in either farming or horticulture at the time the deal was consummated, and we think it is a reasonable inference from the testimony that he relied upon the representations in the letter and afterwards reiterated in part by plaintiff and his agent, and that by so

relying upon the statements he may have been over-reached in the deal and agreed to pay something more than a fair price for the farm. But if we assume that he was defrauded as to the value of the premises and that he had a right under the law to rescind the transaction as soon as he learned of the fraud, we think he has waived that right by his subsequent conduct. With reference to the first ground of complaint, it can be said that Mr. Klotter was capable, although unskilled in farming and horticulture, of determining that the representation as to the number of trees was untrue, and, in fact, he did determine that it was untrue, the first year that he lived on the place. As to the second ground of complaint, the record shows he learned within the first year that the peach trees were infected, and that it meant their destruction, as the public authorities condemned 317 of them and ordered them cut down. He also learned from other sources that they were infected with a fatal malady. The third ground of complaint was not a representation concerning a present existing fact, and therefore must be regarded as a matter of opinion.

This court has said again and again that if one has been defrauded he must complain of it promptly after discovering the fraud. *Jones* v. *Disbrow,* Har. Ch. (Mich.) 102; *Street* v. *Dow,* Har. Ch. (Mich.) 427; *Galloway* v. *Holmes,* 1 Doug. (Mich.) 330; *Craig* v. *Bradley,* 26 Mich. 353; *Hubbarston Lumber Co.* v. *Bates,* 31 Mich. 158; *Dunks* v. *Fuller,* 32 Mich. 242; *Farrington* v. *Smith,* 77 Mich. 550 (43 N. W. 927); *Dailey* v. *King,* 79 Mich. 568, 573 (44 N. W. 959); *Condon* v. *Hughes,* 92 Mich. 367 (52 N. W. 638); *Wylie* v. *Gamble,* 95 Mich. 564, 575 (55 N. W. 377); *Bedier* v. *Fuller,* 106 Mich. 342 (64 N. W. 331); *Warnes* v. *Brubaker,* 107 Mich. 440 (65 N. W. 276); *Reed* v. *Ismond,* 110 Mich. 16 (67 N. W. 912); *Bennett* v. *Hickey,* 112 Mich. 379, 383 (70 N. W. 900); *Speicher* v. *Thompson,*

141 Mich. 654 (104 N. W. 1104) ; *Hakes* v. *Macklin*, 170 Mich. 228, 233 (136 N. W. 509).

Notwithstanding Mr. Klotter was fully informed before the end of the first year of the fraud which had been practiced upon him, he paid plaintiff the $500 note which fell due June 29, 1912, with only a mild protest to the banker, with whom it had been left for collection, that he did not think he ought to pay it, and on September 21st of the same year he placed a second mortgage on the premises running to his sisters, and also made permanent improvements upon the premises. As to his knowledge of the fraud when he did these things, his own testimony will disclose:

"*Q.* Now, at the time you paid the note on June 29, 1912, you knew just as much about that proposition of being defrauded then, as you have since, isn't that so?

"*A.* Yes, sir.

"*Q.* And therefore you knew all about it in 1912, when you paid the $500, didn't you?

"*A.* Yes, sir.

"*Q.* And you knew all about it when you made the mortgage of $3,800, which is as to this 80 a second mortgage, on the 21st day of September, 1912, didn't you?

"*A.* Yes, sir."

It does appear that on several occasions defendant expressed some dissatisfaction to the plaintiff concerning his purchase, and on one occasion he told plaintiff that he ought to make good the trees which had been condemned by the public in 1912, but plaintiff did not do so, and no steps were taken by defendant looking toward a rescission of his purchase until the present suit was started in August, 1913, to foreclose the mortgage. If defendant was desirous of rescinding the deal prior to the suit, his conduct was very much at variance with his wishes. His acts indicated that he intended to retain the premises and abide by his pur-

chase, notwithstanding the fraud. He continued to live upon and operate the farm and to take the avails thereof. He made improvements on the buildings and paid an installment on the purchase price in 1912, and we think his testimony fairly shows that he would have paid the second note in 1913 had it not been for the lack of funds. Under these circumstances, he must be deemed to have waived whatever right he had to complain of the fraud. *State Bank of Iowa Falls* v. *Brown,* 142 Iowa, 190 (119 N. W. 81, 134 Am. St. Rep. 412) ; *Ruhl* v. *Mott,* 120 Cal. 668 (53 Pac. 304) ; *Lee* v. *McClelland,* 120 Cal. 147 (52 Pac. 300) ; *Annis* v. *Ferguson,* 84 S. W. 553 (27 Ky. Law Rep. 56) ; *Hurt* v. *Miller,* 95 Va. 32 (27 S. E. 831) ; *McQueen* v. *Burhans,* 77 Minn. 382 (80 N. W. 201) ; *Bennett* v. *Hickey,* 112 Mich. 379, 382 (70 N. W. 900) ; *Speicher* v. *Thompson,* 141 Mich. 654 (104 N. W. 1104) ; *Parkyn* v. *Ford, ante,* 184 (160 N. W. 531).

The decree of the trial court must be reversed, and one made providing for a foreclosure of the mortgage as prayed. Plaintiff will recover his costs in this court.

KUHN, C. J., and STONE, OSTRANDER, MOORE, STEERE, and BROOKE, JJ., concurred. PERSON, J., took no part in the decision.