. SMITH v. HIGHLAND PARK STATE BANK.

1. Appeal and Error—Judgment Non Obstante Veredicto—Evidence.

In action against bank and real estate broker to recover amounts plaintiff had paid in taxes and on purchase price under land contract where jury gave verdict against bank but not against broker, testimony is viewed in light most favorable to plaintiff on her appeal from judgment *non obstante veredicto* for defendant bank.

2. Vendor and Purchaser—Brokers—Misrepresentations—Agent of Purchaser.

Statements to purchaser by broker would not impose liability upon vendor for misrepresentations contained therein where broker acted as agent of the purchaser in the matter and vendor did nothing to ratify the broker's acts merely by accepting benefits of the sale.

3. Same—Rescission—Repairs—Laches—Padlocked Premises.

Purchaser under land contract requiring her to make repairs upon premises, who failed to make them and who waited nearly a year and a half after purchase and a month after premises were padlocked for one year for illegal use before giving notice of rescission could not place vendor *in statu quo* and was not entitled to recover payments made under contract and for taxes.

Loss of power to rescind by failure to notify, see 2 Restatement, Contracts, § 483. Restoration as condition precedent of rescission, see 2 Restatement, Contracts, § 349, Restatement, Restitution, § 159 (1b); recovery of expenditures, see Restatement, Restitution, § 177, comment c.

4. SAME—RESCISSION—IN STATU QUO.
>    Placing the vendor *in statu quo* is requisite to rescission of a
>    land contract.

Appeal from Wayne; Neuenfelt (Lila M.), J.
Submitted June 6, 1944. (Docket No. 7, Calendar
No. 42,418.) Decided June 30, 1944.

Action by Bonnie Osborne Smith against High-
land Park State Bank and another to recover
amounts paid on land contract. Verdict for plain-
tiff against defendant bank. Judgment for defend-
ants *non obstante veredicto.* Plaintiff appeals.
Affirmed.

*Roxborough & Taliaferro,* for plaintiff.

*Miller, Canfield, Paddock & Stone,* for defendant
bank.

NORTH, C. J.   On November 22, 1938, plaintiff en-
tered into a contract with defendant bank to pur-
chase the premises at 3477 Beaubien street in De-
troit.   On April 15, 1940, plaintiff gave defendant
bank notice of rescission and on April 20th brought
this action to recover the amounts paid on the pur-
chase price and taxes, claiming fraudulent misrep-
resentation.   Defendant McQueen was the broker
through whom the land was purchased.   Upon trial
by jury, a verdict of $625.22 was given against the
defendant bank but the jury found no cause of ac-
tion against defendant McQueen.   Upon timely mo-
tion, the trial court granted the bank's motion for
judgment *non obstante veredicto.*   Plaintiff appeals,
claiming that the trial judge was in error in enter-
ing such judgment after the issues of fact were sub-

mitted to and passed upon by the jury. Plaintiff does not attack the verdict of no cause of action as to defendant McQueen. To ascertain the correctness of the trial judge's action, we view the testimony in the light most favorable to the plaintiff.

In view of the fact that the jury found no cause of action as to McQueen and in order to support a verdict against the bank, it is necessary to have testimony tending to show that the bank or its agents perpetrated the alleged fraud upon the purchaser. A review of the record does not disclose such testimony.

Plaintiff had known defendant McQueen for several years and had made previous purchases of real estate through him. Plaintiff advised McQueen that she wished to purchase a certain type of real estate, and accompanied McQueen on inspections of several properties. McQueen checked the assessor's records and found that the property here involved was owned by defendant bank. He called at the bank to ascertain the price of the property and obtained from the bank its form of preliminary agreement, apparently a type of an offer to purchase. The form was filled out, and McQueen was informed by the bank that the property would not be sold unless the form contained an undertaking by the purchaser to make repairs. On October 11, 1938, a $50 down payment and a final offer of purchase containing the provision ''purchaser agrees to recondition house inside and outside and do all necessary repairs before March 1, 1939,'' was presented by plaintiff, acting through McQueen, to the bank. The receipt given by the bank to McQueen acknowledged the payment of $50 by him ''as agent for B. Osborne Smith.''

On October 17, 1938, the offer to purchase was

approved by the bank and plaintiff so notified. About a month later plaintiff was notified by the bank that her deposit would be forfeited if the transaction was not closed by November 22, 1938. On that date McQueen picked up the copies of the land contract which had been prepared by the bank and took them to the plaintiff for her signature. This contract contained a printed clause that purchaser agreed to accept the premises in their present condition, subject to all defects, known and unknown, and forthwith to make all repairs necessary to put the premises in first-class condition. The contract also included a typewritten provision in which the purchaser agreed on or before March 1, 1939, to recondition the exterior and interior and to do "all necessary repair work to put said building in good, safe, sound, secure and tenantable condition, all in a workmanlike manner and to the satisfaction of the bank." Plaintiff signed the contract November 22, 1938. McQueen then took the copies to the bank for execution by an officer and later returned plaintiff's copy to her.

Plaintiff testified that she inspected the property twice from the outside before deciding to buy it, and that each time she remained in a car near the property. Plaintiff's discussions concerning the property were wholly with McQueen. Plaintiff claims that fraud was perpetrated on her because McQueen told her the building was in good condition whereas the property was badly run down and needed very extensive repairs.

The uncontroverted testimony is that McQueen was at all times acting as the agent of the plaintiff and that there was no question of fact concerning this agency to be submitted to the jury. As McQueen was the plaintiff's agent, the statements

made by him to his own principal could not create a liability upon the defendant bank, which neither directly nor indirectly made any false representation. Even though McQueen did make misrepresentations to the plaintiff, which question is not here passed upon, in this case there is no ground upon which the bank could be held liable for those misrepresentations. Nor was there under the facts in this case subsequent ratification by the bank of McQueen's acts by accepting the benefits of the sale such as would create or imply the relation of agent and principal between the bank and McQueen.

As stated above, the jury found no cause of action against McQueen and the plaintiff failed to show a sufficient relation between McQueen and the bank to support a verdict against the bank. This alone is sufficient to affirm the case without a discussion of other defenses urged. However, in passing, we also note the fact that although the property was purchased November 22, 1938, no action for rescission was started by the plaintiff until April of 1940, which was about a month after the building had been padlocked because of unlawful use. During this period plaintiff or her agents knew of the condition of the building, and the trial judge could well have dismissed the case because of plaintiff's failure to take timely action. *Draft* v. *Hesselsweet*, 194 Mich. 604; *Gloeser* v. *Moore*, 284 Mich. 106.

It is also worthy of note that repairs were not made by the plaintiff in accordance with the contract of purchase. And further plaintiff could not put defendant bank *in statu quo* because in March, 1940, the building had been padlocked for one year, and thereby the bank would have been prevented from renting the padlocked portions of the building.

Placing *in statu quo* is requisite to rescission. *Gloeser* v. *Moore, supra.*

Affirmed, with costs to appellee.

STARR, WIEST, BUTZEL, BUSHNELL, SHARPE, BOYLES, and REID, JJ., concurred.