HOLMES *v.* HUIZENGA.

1. FRAUD — EQUITY—APPLICATION OF FUNDS—CONTRACTS — REMEDIES.

Affirmance of a contract induced by fraud eliminates any defense on that ground in a suit to compel an accounting for funds received by virtue of it.

2. ACCOUNTING—SPECIFIC PERFORMANCE—MORTGAGES—BILLS AND NOTES.

The holder of a mortgage under an assignment requiring him to pay a portion of the amount received on the instrument, to cancel an obligation of the assignor, may be compelled to account to the assignor where he forecloses and bids in the property.

3. BILLS AND NOTES — INDORSERS' LIABILITY — MORTGAGES — ASSIGNMENT—EQUITY—CLEAN HANDS.

The holder of a note and mortgage by indorsement and assignment, who neglects to take necessary steps to charge the assignor and indorser, may not interpose the same as a defense in a suit for accounting ·and application of the proceeds on foreclosure in accordance with the contract of assignment.

4. MORTGAGES—ASSIGNMENT—NEGLIGENCE OF ASSIGNEE.

Such assignee is not chargeable by the assignor with negligence for failure to collect insurance on the mortgaged premises, which the assignor failed to have insured for his benefit while he held the mortgage, and which burned shortly after the transfer, the insurance being collected by the owner.

Appeal from .Ottawa; Padgham, J.   Submitted January 13; 1910.   (Docket No. 44.)   Decided March 19, 1910.

Bill by Joseph S. Holmes against Gerrit T. Huizenga for an accounting.   From a decree for complainant, defendant appeals.   Affirmed.

*Wilkes & Stone*, for complainant.

*Diekema & ·Kollen*, for defendant.

HOOKER, J. In September, 1904, Holmes, the complainant, owned a farm in Ottawa county. On the 23d of that month he traded it for a dwelling in the city of Holland, Mich., subject to a mortgage for $300, which he assumed, taking from Van Der Meulen, with whom he dealt, two promissory notes for $300 and $2,000, respectively, secured by mortgage upon the farm, which mortgage contained an insurance clause. He subsequently sold the notes and mortgage to Huizenga, the defendant, who required him and his wife to indorse the notes, and who paid down $1,983.67, and executed the following writing, viz.:

"Whereas Joseph S. Holmes and wife have this day sold and assigned to Gerrit T. Huizenga a certain mortgage dated September 23, 1904, and recorded in the register's office for Ottawa county, in liber 78 on page 173 of mortgages, and said Gerrit T. Huizenga having paid said Holmes and wife $1,983.67 for said mortgage, it is agreed and understood by the undersigned that whereas said mortgage is of the amount of $2,300 and is represented by two notes, one of $300 and one of $2,000. It is agreed that all the interest which said Huizenga receives upon said $300 note he will pay to P. H. McBride to apply on the mortgage on the house and lot of said Holmes, being No. 248 W. 10th street, Holland, Mich., and when said $300 of principal shall be paid he will pay same on said mortgage on the said homestead of Holmes and wife; the said $300 not having been paid by said Huizenga for said mortgage, but when the same is paid to be used for the payment of said mortgage on said Holmes homestead, to wit, No. 248 W. 10th St.

"Witness our hands this 4th day of January, A. D. 1905.

"G. T. HUIZENGA.<br>"JOSEPH S. HOLMES."

Holmes informed defendant that he had sold the farm to Van Der Meulen for $4,500 in answer to defendant's question, and that the mortgage was secured by insurance, or as Holmes himself testified:

"There was some talk about the buildings on that property being insured. The buildings on the farm were in-

sured, and I said the insurance was all right as far as I knew; that is what I said. I don't know that I told him the amount of the insurance. I had had the property insured, and when I sold it to Van Der Meulen, I assigned the policy to him, and he assigned the policy on his house in Holland to me.

"Q. Was there a clause put on the insurance policy to make it payable to the mortgagee?

"A. That I heard.

"Q. You never saw to that?

"A. No, sir; I didn't care anything about it.

"Q. But you had a mortgage on the place, and you didn't care whether the insurance was made payable to the mortgagee or not?

"A. I didn't have no mortgage there.

"Q. Didn't you have a mortgage on your place from the time you sold the property to Van Der Meulen until the time you sold the mortgage to Huizenga?

"A. Yes; I had it on for a little while there.

"Q. But in the meantime you didn't care whether it was protected by insurance or not?

"A. I supposed it was all right."

A short time after his purchase of the mortgage, defendant heard that the house was burned, and without delay made inquiry about it, and received somewhat positive assurance that it was other property. However, within three days he wrote the agent of the company about the matter and received a letter from him, stating that the policy had been paid to Van Der Meulen who held it, that the company was ignorant of any claims by Huizenga upon the fund, the policy containing no such provision, but that Van Der Meulen expressed the intention of using the money received ($600) to rebuild, "so it would probably be all right anyway." Van Der Meulen did not do this, but kept the money, and began to commit waste on the place, and under advice of counsel the defendant foreclosed the mortgage by advertisement, and bid the place in for $2,200, declining to attempt collection from complainant on his indorsement, saying he was as well able to stand his loss as the complainant. He afterwards repeatedly asked complainant to take back the place and

pay him back $1,983, but complainant refused. After
his purchase at the foreclosure sale he endeavored to get
full title to the place, made necessary by Van Der Meulen's
continued neglect and waste, which was injurious to the
property. He sued Van Der Meulen on the $300 note,
and obtained a judgment for that sum, and finally can-
celed this judgment, upon which execution had issued,
and paid Van Der Meulen $45 for a quitclaim deed and
immediate possession of the premises. Again he offered
complainant a deed of the premises for $1,983.67, but
complainant refused to accept the offer. Holmes after-
wards filed the bill in this case on the theory that the de-
fendant accepted the note and mortgage in trust to the
extent of $300, and has either received the money through
his purchase, or, if not, has failed to collect the sum
through his neglect, asking an accounting and payment
of the same. These things were decreed, and defendant
has appealed.

By the terms of the notes and mortgage the $300 was
the first due, and under the terms of the agreement, had
it been paid at maturity, it would have been defendant's
duty to apply it on payment of the mortgage. It would
seem equally plain that the proceeds of a sale on fore-
closure would have to be applied first in payment of the
$300 note, and the balance to defendant, unless we are to
be unreasonably technical, and say that, unless the note
was paid by Van Der Meulen, there was no obligation to
pay the note, notwithstanding the fact that the foreclosure
produced funds enough to pay the whole debt. There is
some ground for saying that complainant was not free from
fault, for he told defendant that he sold the farm for
$4,500, when in fact he included considerable personal
property, and his statement about the insurance was mis-
leading. But the record does not show that these things
were the inducement for defendant's purchase, for he ex-
acted an indorsement that made the security ample. Had
he taken the steps necessary to charge the indorser (if he
did not), and been less magnanimous, he need not have

lost a dollar in the transaction, so far as we are able to discover. He elected to affirm the contract, and the question of fraud becomes unimportant.

We are, however, impressed with the good faith of the defendant, and we think that he is not chargeable with neglect in his failure to collect the insurance, or in failing to collect the judgment against Van Der Meulen, or to realize more from the premises. But his contract requires him to pay the $300 mortgage from the first proceeds of the mortgage. He has the farm, and should pay the note. We are unable to tell from this record what his rights are upon the indorsement made by complainant. No claim is made for it apparently, and there may or may not be any legal obligation growing out of it. Should we say that the complainant has come here without clean hands, and is asking equitable relief when not willing to do equity? We cannot say so in view of his indorsement and the apparent failure of defendant to avail himself of all of his security; i. e., his indorsement. If we were able to say that he had not lost his right to relief upon the indorsement, we would deny complainant relief, but apparently the right to enforce payment against the indorser is lost. As we cannot be certain of this, we affirm the decree, with costs, but without prejudice to any rights defendant may have upon the indorsement.

Decree affirmed as modified.

Moore, McAlvay, Brooke, and Blair, JJ., concurred.