## DAMM v. VINCENT.

FRAUD—CONTRACTS—DISAFFIRMANCE—RESCISSION.

A contract for the purchase of a livery stable business is not rescinded by the purchaser on the ground of fraud within a reasonable time after discovery thereof where, although he promptly tells a·representative of one of the partners formerly owning the business that he wants the consideration back, he continues to exercise dominion over the property for two months and causes two conveyances to be made during such period.

Error to St. Clair; Tappan, J. Submitted April 11, 1917. (Docket No. 139.) Decided July 26, 1917.

Assumpsit by Charles Damm against Edward L. Vincent for money obtained by fraud and deceit. Judgment for defendant. Plaintiff brings error. Affirmed.

*C. R. Black* and *J. B. McIlwain,* for appellant.

*Burt D. Cady* and *Joseph Walsh,* for appellee.

Plaintiff sues in assumpsit seeking to recover the sum of $1,500. It appears from the record that the plaintiff is 53 years old, a laboring man, and in the year 1907 was employed as a watchman in the city of Woodstock, Ontario. At that time he was the owner of a real estate mortgage for $4,200, inherited from his father's estate. He was well acquainted with one Robert Colwell who resided in Port Huron, and had lived with Colwell in Port Huron some time prior to 1907 for 15 months. Colwell had formerly lived in Woodstock. Plaintiff prior to 1907 had loaned Colwell several hundred dollars, and Colwell knew of plaintiff's possession of the real estate mortgage. One William A. Fraser and defendant, Vincent, were

owners in equal shares of a livery stable in the city of Port Huron; Fraser was the owner likewise of a blacksmith shop in the same place. Defendant, Vincent, is a man 54 years of age, an employee of the St. Clair County Savings Bank of Port Huron, and was formerly county treasurer of St. Clair county. While the livery stable business was owned jointly by Fraser and defendant, Vincent, it was run exclusively by Fraser, and Fraser had secured from defendant prior to September 25th permission to sell Vincent's one-half of the barn at a stated price. Early in September, 1907, Fraser entered into an arrangement with Colwell to help sell the livery stable business to plaintiff. Thereupon Fraser and Colwell went to Woodstock and tried to effect a trade. Plaintiff at first refused to deal, but permitted Fraser to take the real estate mortgage in order to ascertain whether it was good or not. On a later occasion (September 25, 1907) the parties again met in Woodstock, and plaintiff executed an assignment of the $4,200 mortgage to Fraser, and took a bill of sale from Fraser of the livery stable, valued in the deal at $3,000, and plaintiff either verbally or in writing placed the stable in the hands of Colwell to run. Later the blacksmith shop likewise was turned over by Fraser to plaintiff in place of the balance, the difference between the value of the livery stable and the face of the mortgage. Plaintiff did not examine the livery stable property until October 11, 1907, at which time he testified he found it in poor condition, horses run down, harnesses and buggies old, and the whole property much less in value than had been represented. At that time Fraser was not in Port Huron, but plaintiff claims to have then told Colwell that he wanted his mortgage back; however, at this time (October 11th), at Colwell's suggestion, he executed a bill of sale of the livery stable property to Colwell's wife. On November 11th plain-

tiff again visited Port Huron, and on examination found that Colwell was drinking, and dissipating the property. He secured the services of an attorney, and demanded and received a reconveyance of the property from Mrs. Colwell to himself, and put Colwell out of possession. On November 28th, a little more than two weeks later, he put Colwell back in possession of the property. That possession continued until December 20th, at which time, being advised by his attorney, he decided to try and gather the property together and tender it back to Fraser. Fraser, however, had died on November 13, 1907, so that the plaintiff on December 20, 1907, served notice on the defendant to the effect that plaintiff repudiated all the agreements between William Fraser, Robert Colwell, defendant, and himself, on the ground of fraud, and that he abandoned the livery stable, paint shop, and blacksmith shop. At this time he had succeeded in collecting most of the dissipated property. Defendant paid no attention to the notice, and it is not exactly clear from the record what ultimately became of the livery stable stock. Fraser, having cashed the mortgage for nearly its face value in Canada, sent to Vincent at one time $500 and at another time $200, of which $660 was used by defendant to pay notes of Fraser upon which defendant was indorser and the balance, $40, to be paid to one McNaughton for the keep of a horse.

Subsequent to his attempted repudiation of the deal plaintiff brought suit in Canada against the estate of Fraser and against this defendant. Defendant Vincent, though apparently served with process in Michigan, did not appear in the Canadian litigation. Plaintiff there recovered from the Fraser estate, according to his bill of particulars in this case, $3,192.41. Later the action at bar was commenced against Vincent in this State to recover the balance lost by plaintiff in the transaction. At the conclusion of the proofs a motion

to direct a verdict in favor of the defendant was made upon three grounds:

(1) That there was no proof of a partnership that would make Vincent responsible for the actions of Fraser.

(2) That there was no proof of agency that would make him responsible in tort for the actions of Fraser.

(3) "The evidence in this case shows that somewhere along the middle of September, the plaintiff assumed control and obtained possession of this property and kept that possession until the 20th of December, without any effort to rescind; in the meantime handling and moving the property as his own and making two conveyances of it and allowing it to be wasted, squandered, and spoilt, and allowing the business of the concern to be absolutely lost, and then making no effort to return it, except the writing of a letter giving notice. Under these circumstances we move you to direct the jury that he is estopped from rescinding, and that he waived his right to rescind, and that his rescinding comes too late."

The court overruled the motion to direct, but submitted the case to the jury first upon the question as to whether a partnership existed between Fraser and Vincent in the livery stable business of such a character as to make Vincent liable for the fraudulent representations made by Fraser in relation thereto. With regard to rescission the court charged:

"Now on the question of the rescission of the contract of sale. You are further instructed that though you should find that a partnership existed, and that Vincent is chargeable with the fraud committed on Damm, yet the burden is upon Damm to convince you that he took all the necessary steps required to rescind the sale, and to place Vincent in approximately the same situation he was when the sale was made. If Damm fails to establish this fact, then he cannot recover from Vincent, even though he was a partner, and a fraud was committed on Damm in obtaining his mortgage. I will explain that he parted with a $3,000 interest in his mortgage and received the livery prop-

erty in exchange. He now seeks to recover back the property he parted with. Before he can do so, law and justice both require him to return or tender back the horses, rigs, harness, and stock he received as well as the good will of the business itself, in substantially as good condition as when he received it, and he was duly and legally bound to do this with reasonable diligence and speed after he discovered the fraud. Now, gentlemen, you have heard the evidence concerning the condition of the horses, rigs, and stock and the condition or value of the business as a going concern. You have also heard all of the proof as to Damm's knowledge or lack of knowledge as you may find the fact, concerning the property and the care and use given it by Colwell whom he put in charge and to whom he sold it. And I shall leave for your determination the fact whether Damm acted negligently, carelessly, and wrongfully in permitting the property to become run down, dissipated, or its value materially reduced to Vincent's injury. In considering this fact you take into consideration all of the proofs and the surrounding circumstances. If you believe under the proofs that Damm has failed to establish the fact that he took reasonable care to protect the property and prevent its depreciation, or that he was negligent because of unreasonable delay in tendering back the property, then it is your duty to return a verdict of not guilty. If, on the other hand, you find as a fact Damm returned the property in approximately as good condition as he received it, and that he did so within a reasonable time, the surrounding circumstances considered, then you are warranted in holding that he has made a proper tender of the property and business to Vincent."

The jury rendered a verdict in favor of the defendant.

BROOKE, J. (*after stating the facts*). There are some 25 assignments of error which we find it unnecessary to discuss *seriatim*. That plaintiff was victimized in the transaction by Fraser and his irresponsible tool, Colwell, clearly appears from this rec-

ord. That defendant, Vincent, was either morally or legally bound by those representations does not so clearly appear, but, assuming that defendant, Vincent, was engaged actively in a conspiracy with Fraser and Colwell to defraud plaintiff, and that the fraud was accomplished, there would appear to be an insuperable objection to plaintiff's recovery. It is quite clear that on October 11th plaintiff became fully advised of the fraud that had been perpetrated upon him, and though he claims to have told Colwell that he wanted his mortgage back, he took no steps to disaffirm the contract which was made, not with Colwell, but with Fraser, and continued to exercise dominion and control over the property for upwards of two months thereafter, during which time he caused it to be twice conveyed. It is elementary that upon the discovery of fraud the party elected to disaffirm upon that ground must act with diligence and without unreasonable delay. *Jewett* v. *Petit*, 4 Mich. 508; *Carroll* v. *Rice*, Walk. Ch. (Mich.) 374; *Campau* v. *Van Dyke*, 15 Mich. 371; *Wright* v. *Peet*, 36 Mich. 213.

We are of opinion that the motion for a directed verdict in favor of the defendant should have been granted upon the third ground urged by his counsel.

The judgment is affirmed.

Kuhn, C. J., and Stone, Ostrander, Bird, Moore, Steere, and Fellows, JJ., concurred.