JENSEN *v.* EVANS.

1. FRAUD—WAIVER—VENDOR AND PURCHASER.

 Where the vendee in a contract for the purchase of a farm, with knowledge that he had been defrauded in the transaction, made an arrangement whereby restitution was to be made to him in monthly payments, and also made a new agreement with the vendor to lease the premises purchased, the payments on the contract being in arrears, the vendee waived the right to bring an action for the fraud either on the theory of an affirmance of the contract or a rescission of it.[1]

2. VENDOR AND PURCHASER—ACTION GROWING OUT OF ABROGATED CONTRACT MAY NOT BE MAINTAINED.

 The making of a lease ratified the abrogation and surrender of the contract and therefore no action founded or growing out of said contract, which was dead, could be maintained.[2]

Error to Newaygo; Barton (Joseph), J. Submitted December 3, 1924. (Docket No. 15.) Decided April 3, 1925.

Case by Soren P. Jensen against Edwin D. L. Evans and Erwin Tinney, copartners as Evans-Tinney Company, and others for fraud in the sale of land. Judgment for defendants. Plaintiff brings error. Affirmed.

*Clare J. Hall,* for appellant.

*William J. Branstrom (White & Reber,* of counsel), for appellees.

CLARK, J. Plaintiff, claiming damages for fraud in a land deal in which he was the contract purchaser,

---

[1]Fraud, 27 C. J. § 135; [2]Vendor and Purchaser, 39 Cyc. p. 1294.

sued Evans and Tinney, the real estate agents who brought about the deal, his son-in-law, Northcott, who had a part in it, and Dickinson, who held the record title. The declaration has a count on the theory of rescission of the contract, a second count claiming damages for fraud and deceit and in which rescission is not averred, and a third, the common counts in assumpsit. To review a judgment entered on verdict directed for defendants, plaintiff brings error. The controlling question is that plaintiff waived right of action.

Plaintiff, a tenant farmer at Gilman, Illinois, having accumulated about $4,000, desired to buy a farm in Michigan. Northcott, knowing that, corresponded with Evans and Tinney at Fremont, Michigan. His purpose, pretending to act for plaintiff, was to get a secret profit on the sale. After inspection by plaintiff and Northcott, and negotiation with Evans and Tinney, plaintiff signed a contract to purchase the Wilson farm, so-called, in Newaygo county, for $20,000, paying $200 down. Northcott's part of this, unknown to plaintiff, was to have been $1,500. Plaintiff returned to Gilman. He failed to raise expected cash, and sought to back out of the contract. Northcott at Fremont advised plaintiff to come and make a new deal. Plaintiff came. He and Northcott and an agent of Evans and Tinney saw several farms of their list, among them the farm owned by Dickinson and listed at $5,600, and which the agents had advertised for sale at $6,000, and which was priced to plaintiff at $8,000. Plaintiff, advised by Northcott, decided to purchase the Dickinson farm. The Wilson contract was canceled. A contract for the Dickinson farm was made on January 28, 1921, by and between the Evans-Tinney Company, as vendors, and plaintiff, as purchaser, $3,000 down, balance in deferred payments. Plaintiff paid $100 in cash, and gave his check for $900. Northcott pretended to pay $2,000

by giving his check for $2,000 to Evans and Tinney. This check was later destroyed.    Evans and Tinney later wrote, in effect, to plaintiff that they had received the money on these checks.    Plaintiff, believing he owed Northcott because of the check, paid him $2,000. Dickinson accepted an assignment of the contract from Evans and Tinney and his portion of payments then made.    Plaintiff took possession of the farm and worked it during the season of 1921.    He defaulted in payment.    On February 23, 1922, Dickinson sought to evict him.    Plaintiff met Dickinson and his attorney, Mr. Reber, and discussing the matter with them, on March 4, 1922, first learned of the fraud. By this information he was shocked, confused, "pretty bad struck," as he says.    He then and there signed a surrender and release of the contract to Dickinson. Northcott later admitted the fraud and that he had received and used the $2,000.    He had no means of restitution, it seems, except a pension from the government.

Plaintiff consulted Mr. Branstrom, a lawyer in general practice, and then prosecuting attorney of the county.    Mr. Branstrom told him that he could accept no business against Evans and Tinney, as he was their attorney, but if he wanted to make criminal complaint he might do so.    Plaintiff was loath to cause the prosecution of his son-in-law, Northcott, because of his wife and child.    But he made complaint against him.    Arrest and bail followed.    At a conference in the prosecutor's office, plaintiff did not favor his son-in-law's going to prison.    He wanted restitution, and that was discussed at length.    Northcott finally agreed to pay $50, through the prosecutor's office, monthly until the debt was paid.    Northcott does not complain of this arrangement.    Plaintiff had procured bills for an auction sale, preparatory to his leaving the farm.    Dickinson relented.    It was agreed that plaintiff have further chance, that he and

Dickinson enter into a share lease of the land for another year, that there be incorporated into the lease a provision:

"It is expressly understood and agreed that in the event that the party of the second part shall pay unto the party of the first part the sum of five hundred ($500) dollars, on said land contract one-half thereof to be paid on or before October 1, 1922, and one-half thereof on or before January 1, 1923, then and in that event, the party of the second part is to be reinvested with all the right, title and interest which he formerly had in and to said land contract and the rights under this lease is to be canceled and the party of the second part is to have all of the crop grown and harvested under the terms of this lease.     The said sum of $500 when paid is to be applied on said contract."

The lease was made and dated March 1, 1922. Plaintiff recalled the auction bills and worked the land during the season of 1922, remained there until March, 1923.     He did not make the payments on the contract.     He and Dickinson had litigation as to the rent.     About October, 1922, he consulted his present counsel.     On December 7, 1922, he gave notice of rescission of the contract of January 28, 1921.     This suit was commenced February 16, 1923.     Northcott made eight payments to plaintiff upon his settlement with him, amounting to $375.     Some of them were made after this suit was commenced.

In directing the verdict, the trial judge offered plaintiff a judgment in assumpsit against Northcott.     It was declined.     The fraud is palpable.     The temptation to open the door and give plaintiff another chance at the defendants is great.     But it is well to remember the old observation that hard cases make bad law.

Passing the criticized surrender of the contract on March 4, 1922, by plaintiff to Dickinson, when plaintiff entered into the lease with Dickinson he knew the facts, knew that he had been defrauded, and to what

extent, and he knew how and by whom he had been wronged.     With such knowledge, the arrangement with Northcott for restitution, the making of the lease, and plaintiff's taking and keeping possession of the premises under the lease establish, on this record, a waiver of the right to bring this action, either on the theory of an affirmance of the contract or a rescission of it.     27 C. J. p. 24; 27 R. C. L. p. 912; *Burne* v. *Lee,* 156 Cal. 221 (104 Pac. 438) ; *Humphrey* v. *Sievers,* 137 Minn. 373 (163 N. W. 737) ; *Craig* v. *Bradley,* 26 Mich. 353; *Damm* v. *Vincent,* 197 Mich. 151; *Swedish Am. Nat. Bank* v. *Koebernick,* 136 Wis. 473 (117 N. W. 1020, 128 Am. St. Rep. 1090) ; 19 Ann. Cas. 875, note.

The lease ratified the abrogation and surrender of the contract.     The contract was dead, to be revived only upon the happening of the event provided in the lease, which did not happen.     An action founded on or growing out of the dead contract cannot be maintained.     *Kintz* v. *Galvin,* 219 Mich. 48.

Judgment affirmed.

McDONALD, C. J., and BIRD, SHARPE, MOORE, STEERE, FELLOWS, and WIEST, JJ., concurred.