DOUKAS *v.* GREGORY.

SALES—FRAUD—WAIVER.

> The buyer of certain restaurant fixtures and equipment, who, after discovering alleged fraud in the sale, entered into a new agreement adjusting the fraud complained of, thereby waived the right to complain of the fraud in an action by the seller for the balance of the purchase price.[1]

Error to Wayne; Dunham (Major L.), J., presiding. Submitted April 7, 1925. (Docket No. 15.) Decided July 16, 1925.

Assumpsit by Theodore Doukas against Henry A. Gregory for a balance due on a contract of sale. Judgment for defendant. Plaintiff brings error. Reversed.

*Colombo, Colombo & Colombo,* for appellant.

BIRD, J. Plaintiff sued defendant in assumpsit to recover the balance which he claimed was due him on a bill of sale of certain restaurant fixtures and equipment. Defendant pleaded the general issue and gave notice of a failure of consideration and of fraud and misrepresentation in the sale of the property. The fraud complained of was that a part of the equipment was subject to a chattel mortgage, and another part was subject to a title-retaining contract. The bill of sale was executed on October 27, 1921. The consideration was $3,450. Soon after taking possession defendant discovered the plaintiff did not have a clear title to all the property conveyed to him, and he confronted plaintiff with the fact, and considerable controversy ensued. It finally resulted in making a new

---

[1] Sales, 35 Cyc. p. 90.

agreement in which it was recited that certain misunderstandings had arisen and that certain of the property included was subject to a title-retaining contract, and certain of it was subject to a chattel mortgage. It was, therefore, agreed that defendant should make payment of the amount due on the ice box and fixtures, and that he should have credit for such payments on the original consideration named in the contract, and further that the monthly payments to plaintiff should be suspended until after the aforesaid payments were made; that when paid, defendant's monthly payments should be reduced from $250 to $200 per month. After the adjustment some payments were made on these items by defendant, but the business was a losing one, and defendant rescinded the agreement and abandoned the entire proposition. This suit followed and the trial resulted in a verdict for the defendant. A large number of assignments arise over the admission and rejection of testimony. One question affecting the merits requires some consideration.

Plaintiff denies that there was any fraud in the making of the first agreement, but he insists if there were any it was waived by the making of the second agreement. We think plaintiff must be sustained in this contention. If we concede that defendant had no knowledge that the refrigerator and other items of equipment were not paid for when the first agreement was made, it is clear that he afterwards learned of it and insisted upon having it corrected, and it was corrected by the second agreement. In that agreement the parties stipulated that defendant might pay the claims against the property and have credit on the account. It seems to us that the execution of the second agreement was a clear waiver of his right to complain of the fraud. *Foster* v. *Rowley*, 110 Mich. 63; *Hakes* v. *Thayer*, 165 Mich. 485; *Bayer* v. *Winton*

*Motor Car Co.,* 194 Mich. 233; *Draft* v. *Hesselsweet,* 194 Mich. 604; *Parkyn* v. *Ford,* 194 Mich. 184; *Vernon* v. *Antona,* 222 Mich. 83.

In the first case cited it was said:

"The testimony shows that, just prior to the commencement of this suit, the defendant notified the plaintiff that he would not keep the property, and plaintiff must take it away. This was not done, and defendant, as shown by his own testimony, continued to use it. It was the duty of defendant, as soon as he learned of the misstatement, to rescind the contract; and notice of such rescission must have been promptly given, and adhered to, in order to bind the parties thereto. The continued use of the property for some thirty days after he had learned the facts would be a waiver of the right of rescission, even though notice of such rescission had been given. *Hubbardston Lumber Co.* v. *Bates,* 31 Mich. 158; *Dunks* v. *Fuller,* 32 Mich. 242; *Campau* v. *Lafferty,* 50 Mich. 114; *Craig* v. *Bradley,* 26 Mich. 353; *Gridley* v. *Tobacco Co.,* 71 Mich. 528; *Beal* v. *Congdon,* 75 Mich. 77; *Dailey* v. *King,* 79 Mich. 568. While the court left the question of rescission to the jury, we think, under the defendant's own testimony, the court should have instructed them to find a verdict for the plaintiff. We think defendant's continued use of the property for thirty days after he learned of the alleged fraud amounted to a waiver of any intent to rescind the contract. *Marthinson* v. *Insurance Co.,* 64 Mich. 384; *Cobbs* v. *Fire Ass'n,* 68 Mich. 466; *Peninsular Stove Co.* v. *Osmun,* 73 Mich. 570."

But it is said defendant learned of other articles that were not paid for after the second agreement was made. We find nothing of this character in the record save a small final balance paid by defendant on the cash register. But it is not clear that this item was outside of the second agreement. We think the court should have charged the jury that defendant waived his right to complain of fraud as to those items which were included in the second agreement. It was somewhat difficult for the jury to determine all of the items

included in the Jasse account, as Mr. Jasse was not clear about it himself.   He was engaged in the business of furnishing a complete outfit for restaurants, and appeared to be of the opinion that the mortgage covered all except the ice box, but was not positive as to this.   But even if his lien did not cover the cash register it was a small item, and defendant was in a position to have the amount paid deducted from the consideration in the bill of sale.

The judgment is reversed with a new trial, with costs to plaintiff.

MCDONALD, C. J., and CLARK, SHARPE, MOORE, STEERE, FELLOWS, and WIEST, JJ., concurred.