## DONALDSON *v.* SIMONS.

CANCELLATION OF INSTRUMENTS—FRAUD—WAIVER—ESTOPPEL.

In a suit to set aside a deed to property purchased by plaintiff from defendant on the ground of fraud and misrepresentations, and for an accounting on other transactions involving the mortgaging of certain property by plaintiff, the foreclosure of the mortgages, and the acquirement of the property by defendant, where the record shows that plaintiff twice settled her differences with defendant, including the fraud, if any, the court below properly dismissed the bill.

Appeal from Wayne; Hart (Ray), J., presiding. Submitted January 21, 1927.    (Docket No. 92.)    Decided April 1, 1927.

Bill by Lavina B. Donaldson against David W. Simons to set aside a deed, for an accounting, and for an injunction.    From a decree dismissing the bill, plaintiff appeals.    Affirmed.

Cancellation of Instruments, 9 C. J. § 78; Compromise and Settlement, 12 C. J. § 33.

238—Mich.—5.

*L. B. Gardner* (*Philip H. Robinson*, of counsel), for plaintiff.

*Arthur Schueler*, for defendant.

FELLOWS, J.    Along in the summer of 1920 the plaintiff was in need of ready cash. .She needed $3,800 to pay into court within a short time to protect certain rights in litigation she was having, and other needs brought her requirements up to $5,000.    She owned property located on Hamilton boulevard, which will hereafter be referred to as the Hamilton boulevard property, and property at Grosse Pointe, which will hereafter be referred to as the Grosse Pointe property. She directed her representative, Mr. Lyons, to see defendant, which he did.    Defendant declined to make the loan, stating he was not interested.    Again Mr. Lyons visited defendant and a deal was later closed. We shall later have occasion to state the facts and claims of the parties more in detail, but for the present it will suffice to say that plaintiff purchased property owned by defendant and one Wolf Kaplan at Wiarton, Ontario, for $10,800, borrowed of defendant $5,000 and gave to him a mortgage on the Hamilton boulevard property for $7,800, and to Wolf Kaplan a mortgage on the Grosse Pointe property for $8,000.    In February following, plaintiff was in need of more money. Lyons arranged with the Michigan Mutual Life Insurance Company to procure $15,000 on the Hamilton boulevard property, conditioned on its mortgage being made a first lien.    Defendant was again approached. As a result of negotiations defendant's mortgage on the Hamilton boulevard property was discharged, a first mortgage for $15,000 was given the insurance company on that property, a second mortgage was given to one Harris Kaplan, the payment of which was guaranteed by defendant, and he was paid $2,000, which plaintiff claims was a bonus, but which defend-

ant claims was a commission and consideration for his guaranty. The plaintiff made no payments on any of these mortgages and they were all foreclosed. Defendant paid the amount due on all of them and took title to the property. This bill was filed September 4, 1924, by which it is sought to set aside the Wiarton deal on the grounds of fraud and misrepresentations, for an accounting on the other transactions, a purging of the deals of claimed usurious charges, and the fixing of a lien on the property at the amount found on the accounting. No tender or offer to redeem is made in the bill. From a decree dismissing the bill, plaintiff appeals.

1. Before taking up the details of the various transactions involved here, we should consider some of the general claims made on behalf of plaintiff. It is insisted she is very hard of hearing, that her eyesight is somewhat impaired, that she has failed very much both physically and mentally, and was at the time of the transactions here involved and is now in such a state physically and mentally as to be unable to fully protect herself. The trial judge who heard and saw her on the witness stand stated in the opinion filed by him:

"It is further claimed by the plaintiff that she is very old, weak and decrepit and very deaf. It is true that she is along in years, but while she was on the stand she had a remarkably keen mind for what she wanted to remember, and it could not help but be noticed by the court that during her examination that she could hear and understand questions put to her in an ordinary tone of voice and answer them very quickly. She undoubtedly has a very keen mind even in her old age."

She claims to have had many dealings with defendant which were highly satisfactory, and to have had implicit confidence in him and a large number of exhibits were introduced to show their dealings. A de-

tailed examination, however, of such exhibits show that they all relate to three mortgages held by defendant by assignment on a subdivision owned by her, the most of them being releases of the mortgages on the lots as they were sold.   We are not convinced that their relations were in any degree fiduciary or that their relations were in any degree confidential.

2. The record is convincing that plaintiff paid much more for the Wiarton property than it was worth.   It is likewise convincing that defendant got much less for it than he had invested in it.   The parties are in conflict as to who suggested the deal.   Plaintiff's claim is that it was suggested by defendant, and that he made many false representations to her concerning its condition and its value.   Defendant claims it was suggested by Mr. Lyons, plaintiff's representative, and that he insisted to Mr. Lyons that he would not make the deal unless he, Lyons, would make an independent investigation of the property; that he made no representations as to the property and did not see plaintiff personally until the deal was ready to be closed; that he then asked her if she was satisfied with the property and knew all about it, and that she replied in the affirmative.   In this he is corroborated by the testimony of his son Charles who at present is one of the United States district judges for the eastern district of Michigan.   Plaintiff was represented in the transaction by Mr. Lyons, a real estate dealer with 35 years' experience, and her own lawyer, Mr. Hatch, a man of high standing in his profession.   Her attorney drew the papers.   It appears practically without dispute that Judge Simons, who was then in active practice and who did his father's law business, after looking over the abstract and papers, advised his father against making the loan and notified Mr. Hatch that the deal was off.   Plaintiff and her representatives were persistent and the deal was closed.   Mr. Lyons

admits that in the fall he went up and looked over the Wiarton property. In November defendant received by registered mail a letter on the stationery of plaintiff signed by her in which it was claimed, as plaintiff here claims, that defendant had misrepresented the Wiarton property to her. She admits the signature but denies she sent the letter. We can not accept her denial at par. The letter shows that she then possessed substantially all the information about the Wiarton property she claims she later acquired, at least it shows that if false representations were made concerning it, she then knew they were false. Defendant replied by registered mail denying that he had made any representations concerning the Wiarton property but offered to rescind the entire transaction, to have the mortgages on her property canceled and accept back the Wiarton property and the money advanced to her. We need not make a specific finding on all the disputed facts growing out of the Wiarton property deal as the parties shortly afterwards ratified and confirmed it. This leads to the second transaction.

3. As noted, the insurance company insisted that its mortgage for $15,000 should be a first mortgage on the Hamilton boulevard property. This necessitated taking care of the mortgage then on that property. Defendant was approached to finance the transaction. In view of the claims that had been made as to the Wiarton deal, Judge Simons, who officed with and represented his father, insisted upon confirmation and ratification of that transaction if his father had further dealings with plaintiff. This was agreed to. Judge Simons prepared an agreement. Defendant produced in court Exhibit 18 which Judge Simons says was the agreement prepared by him and the only one prepared by him. Plaintiff produced in court Exhibit 19 which she claims was the agreement prepared by Judge

Simons; it is purported to be signed by defendant and when it was shown to him he acknowledged that it was his signature, but upon reading the exhibit he denied ever signing such a paper and insisted that if he did sign it, it was a substitute for the one actually prepared by his son. Exhibit 18 is an original and Exhibit 19 is a carbon. Both ratify and confirm the Wiarton deal. In Exhibit 18 defendant agreed to underwrite the second mortgage on the Hamilton boulevard property and guarantee the payment of both principal and interest. This he did. In Exhibit 19 defendant agreed to guarantee the payment of both mortgages as to principal and interest for a period of five years. Plaintiff claims that the agreement as embodied in Exhibit 19 was the actual agreement between the parties; that defendant agreed to take care of and save her harmless on these mortgages for five years. This is emphatically denied by defendant and Judge Simons. One handwriting expert was called by defendant; he expressed the view that the signature on Exhibit 19 was not that of defendant. Two handwriting experts were called by plaintiff; they expressed the view that it was his genuine signature. We have spent much time in examining the numerous original exhibits in the case which bear the admitted signature of defendant and have compared them with the signature on Exhibit 19, aided as we are by the testimony of the experts. If it is a forgery it is a very clever one, and we are not inclined to reach the conclusion that it is a forgery, but we are satisfied from the testimony in the case that if defendant signed it he did so under the belief that it was a duplicate of Exhibit 18. Some of the considerations leading us to this conclusion should be noted. The deal was not consummated until six days after the agreement was reached and was prepared. Other papers had to be prepared and signed and there were other parties

to deal with. Defendant's expert testifies that Exhibit 18 was made on an L. C. Smith typewriter and that Exhibit 19 was made on an Underwood typewriter. This is not denied by either of plaintiff's experts. Mr. Lyons signed both exhibits as a witness. All the experts agree that his signature on Exhibit 19 is with a different pen and a different ink from those used on Exhibit 18. The two exhibits are of about equal length and the place for signature occupies the same place on the second page in both exhibits. It would have been the easiest thing in the world to successfully substitute Exhibit 19 for the carbon copy of 18 when the time came to sign up. Although claiming the agreement was as embodied in Exhibit 19, plaintiff does not deny that she signed Exhibit 18. But the agreement itself was one which it is doubtful any business man of defendant's experience would undertake. The taxes which defendant was required to pay to protect the property, together with the interest, would run up to nearly $3,000 a year. The property was not income-producing property. Under plaintiff's claim, defendant agreed to carry the load for five years without power or right to protect himself on a falling real estate market, and was bound to prevent foreclosure of the mortgages for five years no matter what happened. We are not satisfied defendant made any such agreement or knowingly signed any contract so obligating himself. In view of the final transaction between the parties, which we shall now discuss, it becomes unimportant to consider whether the $2,000 was a bonus or a commission.

4. In June, 1922, Robert M. Dalton, an attorney, of Detroit, claiming to represent the plaintiff, took her matters up with defendant. He threatened to file a bill, but nothing came of it. Plaintiff denied that Mr. Dalton represented her. In the summer of 1923, Mr.

John C. Spaulding, an attorney of 22 years' standing, associated with Miller, Canfield, Paddock & Stone, took up with defendant and his attorney the question of settlement of plaintiff's claim, and a settlement was agreed upon.    Plaintiff denies that Mr. Spaulding represented her, but she signed the settlement agreement and acknowledged its execution before her nephew, Donaldson Craig, who was a notary public. The equity of redemption had then expired, but it was agreed that plaintiff might purchase either or both of the properties at the sums due on the mortgages together with costs, interest and taxes, the respective amounts being fixed in the agreement, and if both were taken $2,000 should be deducted.    This took care of and gave credit for the so-called bonus.    If plaintiff did not elect to pay the money and take the property back, she relinquished any claim to the property, and she executed deeds and placed them in escrow to effectuate the terms of the contract.    Plaintiff made no payments, but something over a year after the execution of the settlement agreement filed this bill.

5. The briefs on both sides of the case refer to other matters which we have not detailed and which can not be detailed if the opinion is kept within reasonable compass.    There are two outstanding items in the case:  The deal for the Wiarton property, and the so-called bonus.    As to the Wiarton deal, which plaintiff now seeks to rescind, it appears from what has already been said that within a few months after its consummation plaintiff claimed that it was a fraudulent one, and defendant, although denying any fraud, offered to rescind the entire transaction, asking that he be restored that, and only that, which he had parted with; this offer was not accepted.    Thereafter, with full knowledge that she had been defrauded, if she had been defrauded, plaintiff entered into a new con-

tract which ratified and confirmed the Wiarton trans-
action, and this is true irrespective of whether Ex-
hibit 18 or Exhibit 19 is the true contract.    Over a
year after the mortgages had been foreclosed and
after the equity of redemption had expired, with the
aid of reputable counsel, she came to a settlement
of her dealings with defendant under the terms of
which she could have been restored to all her property
at any time within six months thereafter by the pay-
ment of the amount due on the mortgages less the
so-called bonus.    Counsel for plaintiff indulges in the
brief in several computations and claims the amount
fixed in this contract of settlement is incorrect.    But
it is the amount agreed upon by the parties, aided by
their attorneys, and no one at the time of the settle-
ment, so far as this record discloses, questions the
correctness of the figures, nor are we persuaded that
an incorrect amount was agreed upon.    It is not asked
by the bill that either settlement agreement be set
aside.    Having on two occasions settled her differ-
ences with defendant, she can not, under the uniform
holdings of this court, at this time maintain this bill.
Among the numerous cases see *Holmes* v. *Huizenga,*
160 Mich. 344; *Bowen* v. *Stocklin,* 215 Mich. 341;
*Jensen* v. *Evans,* 230 Mich. 199; *Draft* v. *Hesselsweet,*
194 Mich. 604; *Kintz* v. *Galvin,* 219 Mich. 48; *Zounes*
v. *Dassios,* 233 Mich. 651; *Van Scherpe* v. *Ulberg,* 232
Mich. 699; *Darling* v. *Abbott,* 221 Mich. 449; *Doukas*
v. *Gregory,* 231 Mich. 631; *Weston* v. *Goldberg, ante,*
61.

In order to accept plaintiff's version of her dealings
with defendant, we would be obliged to disregard the
testimony of defendant, who, like plaintiff, is an inter-
ested witness, and we would also be obliged to dis-
regard the testimony of Judge Simons, now district
judge, a member of the convention which framed our
present Constitution, for two terms a member of the
State senate, and for many years a reputable member

of the bar; we would also be obliged to disregard the testimony of Mr. Spaulding, for 22 years a reputable member of the bar, and beyond that, we would be obliged to disregard substantially all the documentary evidence in the case.    This we are not disposed to do.

The decree will be affirmed, with costs of this court.

SHARPE, C. J., and SNOW, J., concurred with FELLOWS, J.  BIRD, STEERE, WIEST, and MCDONALD, JJ., concurred in the result.    CLARK, J., did not sit.