HART v. COPPER DISTRICT POWER CO.

1. Vendor and Purchaser—Defective Title—Rescission—Prompt Action Required.

   In order to rescind a land contract because of defects in title, the party must act promptly and within a reasonable time.

2. Waters and Watercourses—Flowage Rights—Estoppel to Question Title—Pleading.

   In actions by land owners against corporation to recover purchase price under contracts to purchase flowage rights, defendant could not question plaintiffs' title where it had abstracts of title in its possession for a year without raising any objection

and failed to plead such affirmative defense as required by court rule (Court Rule No. 23 [1933]).

3. CONTRACTS—OFFER AND ACCEPTANCE—OPTIONS—EVIDENCE.

In actions to recover purchase price under alleged contracts with defendant corporation relative to flowage rights, finding of trial court that option agreement whereby land owners agreed to sell certain flowage rights for a given sum within a prescribed time constituted an offer and that such offer was accepted by defendant within the specified time by a letter stating defendant elected to purchase the flowage rights and was ready, able and willing to deposit the agreed sum at a designated place or elsewhere at a place to be chosen by plaintiffs *held,* supported by the record.

4. WATERS AND WATERCOURSES—CONTRACT FOR FLOWAGE RIGHTS—TERMINATION.

After contracts relative to flowage rights had been entered into, letter by attorney for vendors stating that they rescinded all agreements relative to their land except their offers to sell and defendant corporation's elections to purchase and requesting it to forward various instruments relative to latter's counter proposal which would be accepted or rejected within 10 days and a subsequent letter from defendant that in accordance with letter received, it claimed plaintiffs had thereby terminated the negotiations *held,* in actions to recover purchase price under alleged contracts, not to have effected a termination of the contracts.

5. SAME—TENDER OF DEEDS—DELAY—DAMAGES.

Tender of deeds to flowage rights in March, 1937, pursuant to options given in April, 1931, which had been accepted in October, 1931, *held,* to have been made within a reasonable time in actions to recover purchase price, where record sustains trial court's finding that delays occasioned by plaintiffs in the consummation of arrangements leading up to the tendering of the deeds were in no way harmful to defendant.

6. SAME—CONTRACTS FOR FLOWAGE RIGHTS—RESCISSION—NEGOTIATION FOR MODIFICATION OF TERMS.

Contracts for purchase of flowage rights, *held,* not to have been rescinded by subsequent negotiations relative to modification of terms.

Appeal from Ontonagon; Gilbert (Parm C.), J., presiding.  Submitted April 13, 1939.  (Docket Nos.

108, 109, Calendar Nos. 40,283, 40,284.) Decided June 5, 1939.

Separate actions by Ethelyn Barrett Hart, as executrix of the estate of Catherine Barrett, deceased, and individually, against Copper District Power Company, a Michigan corporation, to recover purchase price under contracts for sale of flowage rights. Judgments for plaintiffs. Cases consolidated for appeal. Defendant appeals. Affirmed.

*Robert R. Wright,* for plaintiffs.

*John B. Bennett* and *Ivan D. Wright,* for defendants.

SHARPE, J. Under date of April 30, 1931, Catherine Barrett, since deceased, and defendant company entered into the following option agreement:

"This agreement, made this 30th day of April, 1931, between Catherine Barrett of Detroit of the first part, and hereinafter referred to and designated as 'first parties' and Copper District Power Company, a Michigan corporation, with its principal offices at Ontonagon, Michigan, party of the second part, and hereinafter referred to as 'the company,'

"Witnesseth, that the first parties are the owners of certain lands bordering upon the shores of Lake Gogebic and the tributaries thereof, which said lake and tributaries are located in the counties of Ontonagon and Gogebic, in the State of Michigan, and the company desires to establish its power, authority, estate, interest, easement, title and privilege of impounding, raising, flowing and drawing off the waters of said lake and the tributaries thereof and of flooding, covering and inundating the lands bordering upon said lake and the tributaries thereof.

"Now, therefore, in consideration of the premises and the sum of $1 the receipt of which is hereby

acknowledged, and for other good and valuable consideration, it is hereby agreed between the parties hereto:

"1st.    That the said parties of the first part will, within six months from the date hereof, and at the option of the second party, grant, sell, remise, alien, release and confirm unto the company and to its successors and assigns, forever, the easement, right, title and privilege of impounding, raising, flowing and drawing off the waters of said Lake Gogebic and of covering, inundating and flooding the various parcels of land bordering upon the shores of said Lake Gogebic and the tributaries thereof described as follows:

"N½ of government lot 2, section 17, T 47 N, R 42 W.

said lands being situate in the county of Gogebic, State of Michigan, so that said waters in said lake may be impounded, and raised to the height of 4½ feet above the low water mark of said lake as established by John Barthels of the Bergland Mill at the outlet of said Lake Gogebic previous to the building of the dam at said outlet in the year 1906 and as established by the building of said dam, and to draw off and control said waters and to exercise said rights and privileges at such times and in such manner as the company, its successors and assigns, may decide from time to time without let or hindrance upon the terms and conditions hereinafter set forth.

"In the event that the said company, within the period aforesaid, elects to exercise this option of purchase of said flowage rights, the company shall pay to the parties of the first part hereto the sum of $3,000 upon the execution and delivery of a good and sufficient deed of said rights and privileges hereinbefore mentioned.

"The covenants and agreements herein contained shall run with the land and shall be binding upon and inure to the benefit of the heirs, executors, ad-

ministrators, successors and assigns of the parties hereto.

"In witness whereof the parties hereto have hereunto set their hands and seals the day and year first above written.

"(Signed) Mrs. Catherine Barrett (L. S.)
"Signed, Sealed and Delivered
in the presence of:
(Signed) Mrs. Ethelyn B. Hart

"Copper District Power Company
By: (Signed)  Edward W. Massie
Its Attorney-in-fact."

Under date of October 8, 1931, the defendant company accepted the above option in the manner following:

"To: Catherine Barrett,
          1720 Collingwood Avenue,
          Detroit, Michigan.

"Notice is hereby given that Copper District Power Company, a Michigan Corporation, in accordance with the terms mentioned in an option agreement between you Catherine Barrett, and said Copper District Power Company, dated the 30th day of April 1931, has elected to exercise its option to purchase the flowage rights on the land described therein, described as follows:

"North half (N½) of government lot 2, section 17, township 47 north of range 42, west, Gogebic county, Michigan.

"You will please prepare abstract of title to said premises that the same may be examined and approved by the attorneys of the Copper District Power Company, and also furnish a tax history, and deposit the abstract and tax history with the Merchants & Miners National Bank of Ironwood, Michigan.

"You are further notified that Copper District Power Company is ready, able and willing to perform each and all of the terms contained in said option agreement, according to the terms of said

contract, and said Copper District Power Company is ready, able and willing to deposit the sum of $3,000 to your credit at said Merchants & Miners National Bank, or in such other place or manner as may be designated by you.

"Proposed deeds of conveyance have been prepared according to the terms of said option contract, for execution by the parties and have been deposited with the Merchants & Miners National Bank at Ironwood, Michigan.

"Dated:   October 8, 1931.

"COPPER DISTRICT POWER COMPANY
"By: (Signed) EDWARD W. MASSIE
Its Attorney-in-fact

"Treasurer's Office
Gogebic County, Michigan — ss.

"The mortgage tax $15 on the within mortgage required by Act No. 91, Pub. Acts 1911, paid in full.

"Sgd. HAROLD JACOBSON, Dep. County Treasurer.
"Dated: April 16, 1938."

Under date of April 30, 1931, Ethelyn Barrett Hart also entered into an option agreement with defendant company to sell certain water rights on lot 3 of section 6, township 47 north, range 42 west, Gobegic county. The purchase price mentioned in this option was $7,000 and the option was for a period of six months. On October 8, 1931, the defendant company accepted the above option in the manner following:

"To: Ethelyn B. Hart,
1720 Collingwood Avenue,
Detroit, Michigan.

"Notice is hereby given that Copper District Power Company, a Michigan corporation, in accordance with the terms mentioned in an option agreement between you Ethelyn B. Hart, and said Copper District Power Company, dated the 30th day of April, 1931, has elected to purchase (purchase price to be reduced to $5,500 — and Sulis lot

54″ water reservation) the flowage rights on the land described therein, described as follows:

> "Lot 3 of section 6, township 47 north of range 42 west, excepting the north 192 feet and the south 60 feet of said lot, Gogebic county, Michigan.

"You will please prepare abstract of title to said premises that the same may be examined and approved by the attorneys of the Copper District Power Company, and also furnish a tax history, and deposit the abstract and tax history with the Merchants & Miners National Bank of Ironwood, Michigan.

"You are further notified that Copper District Power Company is ready, able and willing to perform each and all of the terms contained in said option agreement, according to the terms of said contract, and said Copper District Power Company is ready, able and willing to deposit the sum of $5,500, and deed to the south 60 feet of government lot 3, section 6, township 47 north, range 42 west, Gogebic county, Michigan, 54″ water rights reserved, to your credit at said the Merchants & Miners National Bank, or in such other place or manner as may be designated by you.

"Proposed deeds of conveyance have been prepared according to the terms of said option contract, for execution by the parties and have been deposited with the Merchants & Miners National Bank at Ironwood, Michigan.

"Dated: October 8, 1931.

"COPPER DISTRICT POWER COMPANY

"By: EDWARD W. MASSIE

Its Attorney-in-fact

"Treasurer's office
Gogebic county, Michigan—ss.

"The mortgage tax $27.50 on the within mortgage required by Act No. 91, Pub. Acts 1911, paid in full.

"Sgd. HAROLD JACOBSON, Dep. County Treasurer. "Dated: April 16, 1938."

Both of the above options covered certain water rights and also provided that the seller should furnish the buyer a *good and sufficient deed* of the rights and privileges to be conveyed, conveyance to be made by seller if option accepted within six months.

In the fall of 1931 defendant company attempted to secure a modification of the terms of payment specified in the options, but these suggestions on the part of the defendant company did not meet with the approval of plaintiffs. Under date of December 17, 1931, Ethelyn Barrett Hart, acting for herself and her mother, wrote to Edward W. Massie, the attorney for defendant company, as follows:

"We had very definite things in mind which we hoped to accomplish when we consented to sell the flowage rights to the power company. The time is very near when our plans will be defeated. If the funds the company have contracted to pay are not forthcoming, by failing to receive the $500 which we requested in our telegram, we have lost property of considerable value. We are on the brink of further losses and if the funds do not reach us without further delay, our particular reasons for wanting to sell to the power company will no longer exist, and we will feel we should consider closing on a deal against which we held out for nearly 25 years, and which was entered in against our better judgment."

On December 23, 1931, defendant company, through its attorney, replied to this letter as follows:

"My dear Mrs. Hart:
        "Re: Lake Gogebic Flowage.
    "I need not advise you that because of the depression money has become extremely hard to obtain.

This is true not only of individuals, but corporations as well. The Copper District Power Company is confronted with the necessity of curtailing its cash as much as possible.

"Some time ago I advised you that money was available to take up your option of $5,500 and the Sulis lot. At that time the company was able to do so, but unforeseen circumstances which have since arisen have made it necessary for them to ask for a modification of the terms of payment.

"I talked to Mr. Schacht, president of the company and Mr. Speese, manager of the company, regarding your case, and they asked me to take up with you again the matter of payments. They stated they could pay $1,000 by the first of the year and give you two notes in equal amounts for the balance due in one and two years from date.

"I am very sorry that it has become necessary to make this request, but it is due to circumstances beyond our control. I might state that nearly all of the owners of lands who have made agreements with the power company have modified the terms of payment, extending them from one to two years.

"I wish you would also take up with Mrs. Barrett the matter of having the terms of payment of the price for her flowage rights modified as follows: $1,000 cash and two promissory notes in the sum of $1,000 each due in one and two years from date, bearing interest at the rate of 5 per cent. per annum.

"If this arrangement is satisfactory to you, contracts could be drawn and deed for the flowage rights could be deposited in escrow at the Merchants & Miners National Bank at Ironwood, Michigan, with the contract providing that the deeds were not to be turned over to the power company till the notes and purchase price had been paid in full.

"Examination of the tax history shows that there are some taxes in arrears on your property.

"Kindly let me hear from you at your earliest convenience."

Under date of December 31, 1931, Mr. L. D. MacGregor of Detroit, Michigan, wrote to Mr. Massie stating that the matter had been placed in his hands as attorney for Mrs. Hart and Mrs. Barrett. Among other things, the letter contained the following:

"If the title to their properties do not satisfy you kindly let me know by return mail what your exceptions are.

"There has been so much correspondence in connection with this matter and such a delay since your acceptance of their agreement to sell that my clients feel at liberty and do rescind all agreements in connection with this matter except their offer to sell and your election to purchase.

"You will kindly forward agreement of escrow, deeds for the flowage rights, deed for Sulis lot, certified copy of your power of attorney, and check covering the initial deposit to the escrow agent of the Highland Park Trust Company. Mrs. Hart and Mrs. Barrett agree to accept or reject your offer within ten days after receipt of notice from you or the Highland Park Trust Company.

"This procedure is required in order that you will feel bound to make your best offer on penalty of forfeiture of your rights or an action for damage, and they, my clients, will feel that they must take a definite position in regard to your requests for deferred payment.

"The escrow charges are 2 per cent. of the moneys or value of consideration passing through our hands. In this case we will accept a smaller fee to assist in closing this matter. You are requesting leniency in the terms of your contract; therefore you are the party to pay these charges.

"Kindly let us hear from you on or before the 10th day of January, 1932."

Following the above letter nothing further was done by any of the parties until August 16, 1932,

when defendant company wrote Mrs. Hart as follows:

"Dear Madam: Subject: Lake Gogebic Flowage.
"This is to notify you that, in accordance with your letter of December 31, 1931 written by your Mr. L. MacGregor of the Highland Park Trust Company, Highland Park, Michigan, that our option with you was and is treated as a termination of the negotiations; that any delays were occasioned by your conduct in neglecting to accept the company's offer; and that at no time did you comply with the provisions of the proposed option."

Under date of September 26, 1932, Mrs. Hart requested Mr. Massie to return to her the abstracts and tax histories which previously had been sent to him, requesting that they be returned by October 5th, if possible. These abstracts and tax histories were so returned under date of September 30, 1932.

It appears from the abstract of title to Mrs. Hart's land that there is a reservation of mineral rights in the William Bonifas Lumber Company, wherein the lumber company may explore, search, dig, and mine for ores and minerals, and to carry on the business of mining and removing ores and minerals, and to use and occupy so much and such parts of said land for such times as the lumber company may deem expedient, without any interference from Mrs. Hart, heirs or assigns. The abstract of title also shows that under date of August 5, 1931, the State of Michigan condemned and took a 200-foot right of way across her lands. No tender of the deeds was made by plaintiffs until March, 1937, nor did defendant company at any time tender the purchase price.

October 15, 1937, Ethelyn Barrett Hart, as executrix of the estate of Catherine Barrett, deceased,

began suit against defendant company for $3,000 damages and on the same day brought suit in her own behalf against defendant company for $5,500 damages. The above causes were tried separately, but it was stipulated that the testimony introduced would apply to each case. The cases were consolidated on appeal.

At the close of plaintiffs' proof, defendant made a motion for a directed verdict upon the theory that there was a rescission of the contract which bars the present action to reinstate it and sue upon it; and that plaintiff, Ethelyn Barrett Hart, did not have a legal or equitable title to the property which would permit her to convey to the defendant company the rights she agreed to convey.

The trial court denied the motion and granted a judgment in favor of the Catherine Barrett estate in the sum of $3,000 and $157.50 interest and also a judgment in the Ethelyn Barrett Hart action in the sum of $5,500 together with interest in the sum of $288.68. Defendant company appeals and contends that there was no unqualified acceptance of the offers to sell; that if contracts existed, they were terminated by plaintiffs, or not performed within a reasonable time.

Defendant company contends that Ethelyn Barrett Hart is not entitled to a judgment as she never was in a position to convey absolute title to the premises because of certain mineral rights conveyed to the William Bonifas Lumber Company. Plaintiff Ethelyn Barrett Hart claims that defendant company has waived its right to question her title to the property. The letter of December 31, 1931, written by attorney L. D. MacGregor, above mentioned, contains the following, ''If the title to their properties do not satisfy you kindly let me know by return mail what your exceptions are.'' The letter of August 16,

1932, above mentioned, contains no statement of defective title as a reason for termination of the option agreements, nor is the question raised in defendant's pleadings. The record also shows that defendant company had the abstract of title to these properties in its possession for over a year and never raised any question as to the title. We have repeatedly. held that in order to rescind a contract because of defects in a title, the party must act promptly and within a reasonable time. *Mestler* v. *Jeffries,* 145 Mich. 598; *Tacey* v. *State Bank of Linwood,* 242 Mich. 258; *Dertinger* v. *Lathrup,* 251 Mich. 476. Moreover, Court Rule No. 23 (1933) provides that affirmative defenses must be pleaded. No such plea was made in the above case. In our opinion, defendant company may not question the validity of plaintiff's title.

With reference to the cause of action instituted by Ethelyn Barrett Hart, executrix of the estate of Catherine Barrett, the record justifies the finding of the trial court that on April 30, 1931, there was an offer to sell for $3,000; that on October 8, 1931, defendant company accepted the offer in writing and also stated:

"You will please prepare abstract of title to said premises that the same may be examined and approved by the attorneys of the Copper District Power Company, and also furnish a tax history, and deposit the abstract and tax history with the Merchants & Miners National Bank of Ironwood, Michigan. * * *

"Proposed deeds of conveyance have been prepared according to the terms of said option contract, for execution by the parties and have been deposited with the Merchants & Miners National Bank at Ironwood, Michigan."

And that subsequent to the above offer and acceptance, correspondence occurred between the parties

consisting mainly of requests on the part of the owner for payment of the price named, and on the part of the defendant company for an extension of time for payment.

Defendant company contends that the letter of December 31, 1931, above mentioned, was a termination of the arrangement between the parties by plaintiff. We are not in accord with this theory. The agreement between the parties was clear in all respects except possibly as to place of delivery of deed of conveyance and payment of the money. It is evident that plaintiff did not construe the above letter as terminating the agreement as on July 5, 1932. Mrs. Hart on behalf of herself and Mrs. Barrett wrote defendant company a letter which contained the following:

"Up to this date the company has not fulfilled their agreement to pay the stipulated price, which was to be paid in cash and was due at the expiration of the option on October 31, 1931. * * * *
"We are reminding you once more regarding your obligations to us before we begin legal proceedings to collect."

And on July 18, 1932, Mrs. Hart again wrote defendant company which letter contained the following:

"We feel that we have been far too patient in this matter. It is nearly a year since the money was due us, and we plan to start legal proceedings to collect without further delay."

On August 16, 1932, defendant company wrote the following letter:

"Dear Madam:
                "Subject: Lake Gogebic Flowage.
"This is to notify you that, in accordance with your letter of December 31, 1931 written by your

Mr. L. MacGregor of the Highland Park Trust Company, Highland Park, Michigan, that our option with you was and is treated as a termination of the negotiations; that any delays were occasioned by your conduct in neglecting to accept the company's offer; and that at no time did you comply with the provisions of the proposed option."

It is noticeable that the above letter is merely a claim that plaintiffs terminated the arrangements. It is not a clear-cut termination of the arrangements by defendant company and was not made until threats of legal proceedings were made by plaintiffs.

Defendant company also contends that plaintiffs are estopped by their conduct in allowing time to elapse before tendering the deeds and beginning suit. The trial court found as a fact that whatever delays were occasioned by plaintiffs in the consummation of arrangements leading up to the tendering of the deeds were in no way harmful to defendant company. The record sustains such a finding. Under the circumstances in this case, we think the tender of the deeds was made in a reasonable time. The rule of damages in such case may be found in *Re Urban's Estate*, 271 Mich. 16, and *McColl* v. *Wardowski*, 280 Mich. 374.

In our opinion the contract was not rescinded in either of the above cases. Plaintiffs tendered proper deeds and the judgments are affirmed, with costs to plaintiffs.

BUTZEL, C. J., and WIEST, BUSHNELL, POTTER, CHANDLER, NORTH and McALLISTER, JJ., concurred.